**BUTLER LIME AND CEMENT CO., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent.**

No. 80–1121.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1980.
Decided Sept. 8, 1981.

**55.** *See* n.52, *supra.*

Clifford C. Kasdorf, Kasdorf, Dall, Lewis & Swietlik, S.C., Milwaukee, Wis., for petitioner.

Allen H. Feldman, U.S. Dept. of Labor, Office of Sol., Washington, D.C., for respondent.

Before CUMMINGS, Chief Judge, and PELL and WOOD, Circuit Judges.

PELL, Circuit Judge.

In a recent case denying enforcement of an administrative tribunal order, on the second visitation of a case to this court, we wrote:

> We are asked to enforce an order which purports to apply the new standard to the old record but actually reapplies the old standard incorporating [a standard previously rejected by this court].

*Hendricks County Rural Electric Membership Corporation v. National Labor Relations Board*, 627 F.2d 766, 770 (7th Cir. 1980), *cert. granted*, 450 U.S. 964, 101 S.Ct. 1479, 67 L.Ed.2d 612.

In the present case, we have a similar situation presented, but with the significant difference that the administrative agency did not even purport to apply the standard clearly set forth in the mandate of this court's opinion in the case's first visitation here.

Analogously to *Hendricks County*, and paraphrasing somewhat the language from that case, if we had realized when the case was here before that the element introduced into the proceedings which we regarded as necessitating a remand was in fact virtually nonexistent and that the case could therefore have been decided on the record before us, which would have been adversely to the Commission, we would not have remanded the proceeding to the Commission.

In the prior case, it was the Secretary of Labor who complained of the order of the Occupational Safety and Health Review Commission. Because of a factor brought into the case by the Secretary on appeal we deemed it necessary to set aside the Commission order and remand for further proceedings. Without hindsight we could not have been aware of the cavalier fashion in which the clear purpose of the mandate would be disregarded. Now, with it being apparent that the case should have been decided finally when it was here before, we reach the conclusion that we should have then, which was that there should have been no citation issued, and the one that was later issued, following a lengthy bureaucratic journey subsequent to our remand, should be vacated.

It is tempting to leave the matter on the basis of the foregoing generalized statement, and go on to other cases more deserving of attention. Nevertheless, in the interest of delineating procedures which we regard as not consistent with the manner in which administrative tribunals should apply mandates stemming from judicial review, we set forth the scenario of this litigation in some detail.

I. Prior Proceedings.

Butler Lime and Cement Company (Butler) has petitioned this court to review a decision of the Occupational Safety and Health Review Commission (Commission) in the case of *Butler Lime & Cement Co., OSAHRC* Docket No. 855 (Dec. 12, 1979). That decision reversed the decision of an Administrative Law Judge (ALJ) and a prior decision of the Commission by affirming a citation and proposed penalty issued to Butler by the Secretary of Labor (Secretary). This court has jurisdiction pursuant to 29 U.S.C. § 660 (1976).

This controversy is before the court for the second time. In *Brennan v. Butler Lime & Cement Co.*, 520 F.2d 1011 (7th Cir. 1975), the Secretary petitioned the court to review the aforementioned decision of the Commission which, affirming the ALJ, had vacated this same citation. We found there that the Commission had not made necessary findings of fact on the adequacy of Butler's safety program in light of the alleged possibility of arcing of electricity from overhead wires to crane booms, and remanded the case for further proceedings consistent with those concerns. 520 F.2d at 1018–19.

Although the factual background of the alleged violation is fully set out in this court's prior opinion, 520 F.2d at 1012–16, the basic facts warrant a brief reprise. Two of Butler's delivery trucks were mounted with crane booms to deliver bricks. On March 15, 1972, Butler employee Douglas Kapperman drove such a truck to a construction site, parked it near a series of 4,800 volt overhead electric lines, and began raising the crane's boom. There were employees of another company at the site, one of whom warned Kapperman that he was "awful close" to the wires, but Kapperman proceeded to raise the boom. The other employees fled, fearing danger. Kapperman was killed when electricity from the wire passed through the boom. We now realize, which we didn't when the case was previously here, that the boom came into contact with the wires.

Following Kapperman's death, the Secretary cited Butler for a serious violation of 29 U.S.C. § 654(a)(2), based on Butler's fail-

ure to comply with the ten-foot rule of 29 C.F.R. § 1910.180(j) that generally minimum clearance between lines rated 50 kv or below and any part of the crane or load shall be 10 feet. Butler contested the citation, and a hearing was held before an ALJ.

Butler's position at the hearing was that although there was a violation of the ten-foot rule, it did not constitute a "serious" violation under § 17(k) of the Act, 29 U.S.C. § 666(j) (1976), which provides that,

> a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with exercise of reasonable diligence, know of the presence of the violation.

Butler's position was that it fell within the final phrase of the statute because it could not have known that Kapperman would engage in reckless conduct, heedless of his own safety.

Conflicting evidence was presented to the ALJ on the extent of Butler's safety training program. Although it was uncontested that a large poster containing the "stay away ten feet" rule was prominently displayed in an area where employees were likely to see it, and that employees were instructed to read such notices, the degree to which employees were orally instructed on the necessity to avoid overhead wires was the subject of sharply conflicting testimony. There was no expert testimony on the possibility of electricity arcing from wires to a crane boom, nor was there testimony on what methods and amount of such instruction a proper safety program would contain.

The ALJ did not feel the need to make a finding of fact on the adequacy issue, however, because he based his vacation of the citation on the ground that Butler could not have known of the violation because Kapperman's act "was a gross aberration from

safe practice, which aberration was reasonably unforeseeable in light of the employee's record and the task upon which he was employed." The Commission affirmed the ALJ's decision. Commissioner Cleary dissented, focusing on the adequacy of the safety instructions. His dissent pointed out that there was no evidence that Butler had warned Kapperman that electricity can arc, nor that Butler had orally instructed Kapperman to follow the ten-foot rule.

In the course of the appeal of that order to this court, the Secretary seized upon this language from the dissent, claiming that electricity could arc "significant distances," that the danger of such arcing was the rationale for the ten-foot rule, and that Butler's safety program was defective in its failure to communicate orally this possibility to its employees.

Our decision found that the ALJ and the Commission had erred by failing to make findings of fact on the adequacy of Butler's safety training in light of the possibility of arcing. We held that the dispositive issue was not whether the employer could have known of the specific violation as it actually occurred, but whether the employer had taken adequate precautionary steps to protect its employees from the reasonably foreseeable general danger which was the subject of the promulgated standard. The resort to the alternative dispositive issue came about, as is obvious from our opinion, only because it appeared that there could be arcing, a strong justification for a ten-foot rule. In this case, the adequate precautionary steps at issue were the training and safety instructions Butler employees had or should have received on cranes and overhead wires with particular emphasis on the distance that should be maintained from the wires. We found that the ALJ had not made findings of fact on this crucial issue, and remanded the case for further proceedings consistent with the opinion. In framing our mandate to the Commission, we concluded:

> In this respect, it appears to us the possibility that electricity could be transmitted from the wires into the boom by

arcing is of substantial significance. A driver unaware of this possibility might well be of the belief that he was operating with safety so long as actual physical contact between the wires and the boom did not occur. Unless and until he was aware of the arcing possibility hazard, he reasonably might regard the 10 foot safety rule, assuming it had been brought to his attention, as a fuddy-duddy, over-abundance-of-caution restriction. The situation is comparable to the small boy's interpretation of a parental admonition of "don't go near the railroad tracks" as meaning only "stay off the tracks." Until his warning includes bringing home by way of training explanation of the fact that moving railroad equipment extends beyond the rails themselves, the "stay away" warning lacks necessary comprehensive effectiveness. Rules are more likely to be observed if their rationale is understood and it is made clear that they are not just arbitrary pronouncements but are grounded in practical reasons of safety. In the present case, Kapperman may have construed the Lewis inquiry as to his being "awful close to the wires" to mean that care should be used to avoid actual physical contact. Kapperman's lips being sealed, it is, of course, speculative as to his subjective reaction to the 10 foot rule. Whether there was adequate training in view of the arcing possibility is a matter, however, which can be, but has not been, determined in the administrative proceedings.

The necessary finding of fact not having been made, we set aside the decision and order of the Commission and we remand the matter to the Commission for further proceedings consistent with this opinion.

520 F.2d at 1018.

We obviously gave no significance to the necessity of telling any adult that he should not come into actual contact with live wires.

Following our remand, the Commission, in turn, remanded the case to the ALJ, who set a hearing on the issues of what instructions on arcing were required under 29 C.F.R. § 1910.180(j)(1)(i), and whether Butler had furnished such instructions. At this point the Secretary, in a rather startling about face from his position before this court, filed a memorandum alleging that this court's "assumption" that the rationale of the ten-foot rule was to prevent arcing, "gave more weight to the possibility of arcing than it truly deserves." The Secretary conceded that arcing in a line of the voltage involved in this case could amount to no more than .06 of an inch. The Commission thereupon ordered the ALJ to cancel the hearings he had scheduled, and to make findings of fact on the record as it had existed before this court. The ALJ responded that without a hearing, "the record does not afford me the basis for an opinion as to whether or not Butler gave Kapperman adequate safety instructions; I could only engage in 'speculating' about what Butler should have done." *Secretary of Labor v. Butler Lime & Cement Co.*, OSAHRC Docket No. 855 at 5 (Aug. 16, 1976) (footnote omitted). He felt compelled, however, by our opinion (although we do not understand why) and the order of the Commission to affirm the citation despite his own substantial reservations about so doing. The Commission apparently realized that this disposition did not comport with the mandate of this court. However, rather than responding to the concerns reflected in the ALJ's report by scheduling additional hearings, the Commission once again remanded to the ALJ, and once again ordered him to make "a specific factual finding on the present record on the adequacy of Respondent's safety program in light of the possibility of arcing." On this second sub-remand, the ALJ made the only finding of fact he could on the basis of the record as it stood: "Respondent gave no instruction to Kapperman with respect to the possibility that electricity could arc from wires to the crane boom of the truck operated by Kapperman for respondent." At this point the Commission concluded that the ALJ would not make findings of fact of the sort envisioned by this court on the basis of what he perceived was inadequate evidentiary support in the record.

The Commission therefore decided to take matters into its own hands and, chaired now by the lone dissenter in the prior vacation of the Secretary's proposed citation, exercised its own fact-finding powers. Despite the specificity of this court's remand, the decision by the Commission made *no* mention of the adequacy of the safety program in light of arcing, but rather merely reevaluated the evidence on which the ALJ and the Commission had previously vacated the citation and concluded that Butler's safety program was inadequate.

Butler seeks review of the order affirming the citation on the grounds that the Commission erred by failing to follow the mandate of this court on remand, and that the findings of fact on which the citation was based were not supported by substantial evidence.

## II. The Commission Failed To Follow The Mandate Of This Court.

Before we determine whether the Commission's findings were based on the substantial evidence required by 29 U.S.C. § 660(a), we turn to an evaluation of the Commission's disposition of our prior remand. The rule that an administrative agency is limited on remand by the instructions of the reviewing court is settled beyond question. *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 140, 60 S.Ct. 437, 440, 84 L.Ed. 656 (1940); *Chicago & North Western Transportation Co. v. United States*, 574 F.2d 926, 930 (7th Cir. 1978); *Morand Bros. Beverage Co. v. NLRB*, 204 F.2d 529, 532–33 (7th Cir. 1953), *cert. denied*, 346 U.S. 909, 74 S.Ct. 241, 98 L.Ed.2d 407.

The *Morand Bros.* court thoroughly outlined the principles and rationale governing agency disposition following remand:

The position of any administrative tribunal whose hearings, findings, conclusions and orders are subject to direct judicial review, is much akin to that of a United States District Court.... That is to say, it is the "inferior" tribunal, whose decisions, ... are subject to review and con-

sequent approval or disapproval by the reviewing body. The full implication of this relationship is realized when, as here, the occasion arises for the reviewing court to state what it believes to be the substantive law applicable to a particular controversy but finds that the lower tribunal has not conclusively found the facts to which this law should be applied. The result then, in view of the rule that a reviewing court shall not enter initial findings of fact, is an order remanding the cause "for further proceedings in conformity with the decision of this court." ... In such a situation it behooves the inferior arbiter to exercise great care that "the law of the case" is applied to the facts of the case when they have been precisely determined by it. This is so even when it finds itself in well founded disagreement with its reviewer.

. . . .

Experience has taught that causes are disposed of most expeditiously when the correction of errors is left to the superior tribunals and those enjoying judicial or administrative inferiority studiously endeavor to comply with the mandate issued to them.

204 F.2d at 532 (citation omitted).

The purpose of our prior remand is apparent from even a cursory reading of our prior opinion. We required remand because the ALJ had not felt it necessary, in light of his grounds for disposition of the case, to reach the factual issue which this court found controlling as a matter of law, *i.e.*, the adequacy of Butler's safety program in light of the arcing possibility. Furthermore, because the arcing issue was raised essentially for the first time before this court, the factual record was simply not adequate for disposal of that issue. The mandate of this court to the Commission, therefore, was to develop that record and to consider the adequacy of the safety program in light of the arcing possibility. This required that the possibility of arcing be determined, that the response of a proper safety program to that possibility be established, and that Butler's program be meas-

ured against that standard. The Commission failed utterly to comply with that purpose of the mandate.

■ At oral argument in the first appeal of this cause, the Secretary argued that arcing was the rationale for the ten-foot rule, and that absent adequate instruction on that fact, Butler's safety training program would be inadequate. This arcing theory, although mentioned, had not been fully developed at the hearing before the ALJ; simple due process therefore required that the employer be given an opportunity to respond to that theory before this court could reach a final decision on that basis. *See National Realty & Construction Co. v. OSHRC*, 489 F.2d 1257, 1267 & n.40 (D.C. Cir.1973). There was no evidence on the arcing possibility or the adequacy of Butler's response to it before either the ALJ or the Commission. The Commission's second decision found that Butler should have orally instructed employees on the ten-foot rule, but there was no expert testimony on whether such instructions would have been appropriate in the circumstances, whether they should have discussed arcing, or whether Butler's instructions were less frequent or forceful than experts regard as necessary to a proper safety program.[1] *See General Dynamics Corp. v. OSHRC*, 599 F.2d 453, 464 (1st Cir. 1979). As the *National Realty* court remarked in similar circumstances: "In short, the Commissioners attempted to serve as expert witnesses for the Secretary. This is not their role. The Secretary should have called his own expert or experts at the hearing." 489 F.2d at 1267 n.40. The situation here is even more egregious than that in *National Realty*, for here the Commissioners repeatedly thwarted the efforts of the ALJ to hold an evidentiary hearing at which such questions could be resolved.

■ The Secretary contends now that once he conceded that the arcing issue was, in effect, a red herring, the need for further hearings was eliminated. This ignores the thrust of our prior mandate, which was designed not only to determine if arcing was physically possible, but was also intended to resolve the factual issue of whether Butler's safety program met the standards conscientious safety experts would have set. Furthermore, in light of our determination that the arcing issue was "of substantial significance," 520 F.2d at 1018, we find inexcusable the Commission's failure to include any discussion or mention of the arcing possibility in its decision of December 12, 1979. Our mandate was most explicit on the point: "[w]hether there was adequate training in view of the arcing possibility is a matter, however, which can be, but has not been, determined in the administrative proceedings." 520 F.2d at 1018. The Commission has chosen to ignore this mandate in favor of reiteration of the findings of the dissent of then Commissioner, now Chairman, Cleary, in the prior appeal to the Commission.[2] This was an abuse of discretion.

■ We thus find that the Commission erred by failing to follow the instructions of this court on remand. While such error may on occasion be harmless, *see, e. g., General Dynamics Corp. v. OSHRC*, 599 F.2d 453, 463 (1st Cir. 1979), we find that here it has vitiated the fact-finding process on which fair agency procedure must rest.

---

1. The Commission contends that because a violation of a specific duty clause is involved here, resort to an objective standard is unwarranted. However, as the Commission concedes, § 1910.180(j) does not state what an employer should do to insure employee compliance with the rule. This case thus falls within the rule of *General Electric Co. v. OSHRC*, 540 F.2d 67 (2d Cir. 1976), and *Brennan v. OSHRC (Alsea Lumber Co.)*, 511 F.2d 1139 (9th Cir. 1975), which requires that when a regulation governs employee conduct, unless the regulation states what specific employer conduct is required for compliance, the burden is on the Secretary to provide evidence of what more the employer could have done, and some basis that such efforts would have been feasible and successful. Cf. *Ace Sheeting & Repair Co. v. OSHRC*, 555 F.2d 439, 440–41 (5th Cir. 1977) (where standard prescribes precise conduct required of the employer, Secretary need not prove feasibility).

2. The change of personnel which obviously precipitated a change in decision calls to mind a frequent theme of Law Day observances—one applicable not only to courts but to administrative bodies—that decisions should result from a rule of law and not of men.

We are satisfied on the basis of the foregoing that we could properly, without more, particularly in view of the original ALJ opinion and the original Commission ruling, set aside and vacate the later Commission order. Nevertheless, in the interest of not appearing to join the administrative tribunal in less than a full and careful consideration of the case we turn to an examination of the Commission's order of 1979 now under review.

III. The Findings Of The Commission Were Not Based On Substantial Evidence.

■ Our examination of the findings of fact of the Commission is limited to a determination of whether they are supported by substantial evidence on the record as a whole. 29 U.S.C. § 660(a) (1976); *Butler Lime*, 520 F.2d at 1017. Here the issue under review has been narrowed by the prior proceedings to a determination of whether Butler's safety program was adequate in light of the possibility of arcing. We hold that the Board's findings lack the requisite support for a determination that the program was inadequate. We therefore set aside the Commission's order affirming the Secretary's proposed citation.

Although the Commission disposed of the arcing issue without the benefit of an evidentiary hearing, we do note in the record that the possibility of arcing is in fact miniscule; and that the purpose of the ten-foot rule is to protect against error in maneuvering the crane boom. Since the arcing danger is negligible, if not completely nonexistent in the voltage of the lines in question, any finding that the employer failed to instruct on that issue would clearly be an insufficient factual predicate for an affirmance of the proposed citation. Under our previous mandate this conclusion should have resolved the crucial issue of fact left open by the prior administrative proceedings, and resulted in the vacation of the proposed citation.

We are similarly dissatisfied with the Commission's failure to adduce evidence of what precautions or further training Butler should have taken. In the absence of such evidence, we hold that there is an insufficient factual foundation for a finding that Butler's program was inadequate. *See* note 1, *supra*. The Commission's finding of inadequacy is premised on the failure of Butler orally to communicate the ten-foot rule to its employees. However, mere speculation by the Commission that oral instruction would have been more appropriate is not entitled to the protection of the § 660(a) standard. *National Realty & Construction Co. v. OSHRC*, 489 F.2d at 1267 n.40. Furthermore, there was uncontroverted evidence that the ten-foot rule was directly and clearly communicated to the employees by means of a large placard posted next to the time clock. Thus this case is not analogous to the cases of *Ames Crane & Rental Service, Inc. v. Dunlop*, 532 F.2d 123 (8th Cir. 1976) (employer never communicated ten-foot rule, but rather "made available" several hundred pages of OSHRC regulations which employees were free to read if they wished), and *Danco Construction Co. v. OSHRC*, 586 F.2d 1243 (8th Cir. 1978) (employer never communicated ten-foot rule, but rather posted inaccurate sign requiring only six-foot clearance), which the Secretary contends should be controlling here. Nor does this case present a situation like *H. B. Zachry Co. v. OSHRC*, 638 F.2d 812 (5th Cir. 1981), in which there was testimony by the employee involved that he skipped company safety meetings, yet falsified attendance records for fear of losing his job, as well as evidence that a supervisor on the job site ignored the violation of the rule, gave the employee little guidance and instruction on the crane rule, and generally failed to implement the ten-foot rule.

Our review of the record reveals that once the arcing possibility was removed from the case, the record as it stood contained the sufficient evidence necessary to support the Commission's prior vacation of the proposed citation. As Commissioner Moran pointed out in his dissent to the Commission's second remand to the ALJ on May 2, 1977, "any doubt that this accident was a result of Kapperman's total disregard for his own safety, rather than any deficiency in respondent's safety program, . . .

must dissolve because of Kapperman's complete lack of response to the warnings of the two workers on the nearby cement truck.... Certainly, no one could reasonably conclude that more frequent or more specific warnings by respondent would have prevented this tragic occurrence." In light of the evidence that no warning of arcing was required, and that Butler's safety program was adequate, we hold that Butler cannot be held to have had the knowledge necessary to sustain a finding of serious violation under 29 U.S.C. § 666(j).

We therefore conclude that the findings of fact upon which the Commission affirmance of the proposed citation is based do not rest on that substantial evidence required by the statute. We also believe no further remand to the Commission would be appropriate. Because the arcing issue which was left open in the prior administrative proceedings no longer poses an obstacle to a finding that Butler's safety program was adequate, we believe the record permits of only one conclusion—that Butler did not commit a serious violation of the Act. *See Brennan v. OSHRC (John J. Gordon Co.)*, 492 F.2d 1027 (2d Cir. 1974). The citation is therefore set aside.

Review Granted; Order Vacated.