COMMUNICATION WORKERS OF
AMERICA, LOCAL 5008,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

Illinois Bell Telephone Co., Intervenor.

Nos. 85–1924, 85–2225.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 10, 1986.

Decided March 3, 1986.

Lincoln V. Janus, Illinois Bell Telephone, Co. Legal Dept., Chicago, Ill., for petitioner.

Judith Dowd, N.L.R.B., James Coppess, AFL–CIO, Legal Dept., Washington, D.C., for respondent.

Before BAUER, FLAUM and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, requires employers that seek to conduct disciplinary interviews of employees to permit the employees to invite representatives of their union to the interviews. *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). In 1977 the National Labor Relations Board concluded that it should order employers to reinstate, with back pay, employees fired after interviews from which union representatives had been excluded. *Certified Grocers of California*, 227 N.L.R.B. 1211, 1215 (1977), enf. denied on other grounds, 587 F.2d 449 (9th Cir.1979); see also *Kraft Foods, Inc.*, 251 N.L.R.B. 598 (1980) (reinstatement should be ordered unless the employer establishes that the discharge was not based even in part on information obtained at the interview).

Courts proved reluctant to enforce orders of reinstatement, reasoning that § 10(c) of the Act, 29 U.S.C. § 160(c), which provides that the Board may not reinstate an employee "discharged for cause", barred reinstatement of employees who would not have been let go but for the misconduct revealed at the interviews. E.g., *Pacific Telephone & Telegraph Co. v. NLRB*, 711 F.2d 134, 137–38 (9th Cir.1983); *Montgomery Ward & Co. v. NLRB*, 664 F.2d 1095, 1097 (8th Cir.1981). Cf. *NLRB v. Southwestern Bell Telephone Co.*, 730 F.2d 166, 174 (5th Cir.1984); *NLRB v. Kahn's & Co.*, 694 F.2d 1070, 1071–72 (6th Cir.1982). In December 1984 the Board changed course, announcing in *Taracorp Industries*, 273 N.L.R.B. No. 54 (1984), that it would no longer order reinstatement and back pay for violations of the principle announced in *Weingarten*. It gave two

reasons: first, that reinstatement would be inconsistent with § 10(c); second, that reinstatement would be bad policy because the prospect of reinstatement had made the investigatory and remedial process in *Weingarten* cases too adversarial and complex. The Board therefore overruled *Kraft Foods* and, among other cases, *Illinois Bell Telephone Co.*, 251 N.L.R.B. 932 (1980). See 273 N.L.R.B. No. 54 at 4 n. 6.

Overruling *Illinois Bell* was not as easy as all that. The employer had sought judicial review, and this court held that Illinois Bell had violated *Weingarten* when interviewing Cary Ann Hatfield, a telephone operator in Valdalia, Illinois. *NLRB v. Illinois Bell Telephone Co.*, 674 F.2d 618 (7th Cir.1982). Illinois Bell suspected Hatfield of making long distance calls for herself and some prisoners at a nearby state prison without paying the company or billing the prisoners accurately. An investigator of Illinois Bell interviewed Hatfield at a time when no union representative could be found, and Hatfield, who confessed, was fired. We enforced the Board's order to the extent it found a violation of § 7 but remanded the case "for such further proceedings as may be required to determine whether independent evidence sufficiently supported the Company's discharge of Hatfield for cause." 674 F.2d at 623. In other words, we sent the case back to the Board with instructions to apply the *Kraft Foods* doctrine. Before the Board could do this, it overruled both *Kraft Foods* and the decision we had remanded.

The administrative law judge concluded in December 1983 that Illinois Bell could not carry its burden under *Kraft Foods*. The Board decided the case in April 1985. Citing *Taracorp*, it held that Illinois Bell needed to prove nothing at all. It revoked the portions of its 1980 decision that had ordered Illinois Bell to reinstate Hatfield. 275 N.L.R.B. No. 27 (1985). The new decision orders Illinois Bell to cease and desist from violating the *Weingarten* rule and to post appropriate notices, but it orders no relief for Hatfield personally. Chairman

Dotson and Member Hunter joined this decision. Member Dennis dissented, arguing that the terms of our remand in 1982 required the Board to apply the *Kraft Foods* doctrine notwithstanding the Board's abrogation of that doctrine in 1984.

Hatfield's union now requests us to order the Board to revive its original decision, under which Hatfield would be reinstated with back pay. The Union maintains that our mandate in 1982 requires no less. If the Board was free to decide the case anew, the Union insists, it still must reinstate Hatfield because *Taracorp* misunderstood the meaning of § 10(c) of the Act. We have misgivings about the construction of § 10(c) in *Taracorp*, but we conclude that the Board was entitled to adopt the *Taracorp* doctrine as an exercise of its discretion over remedies for violations of the Act. Because the Board is entitled to rethink old rules—even after a remand from the court—we enforce its order.

I

If we had held in 1982 that *Kraft Foods* stated an approach to remedies that the Board was legally required to pursue, then the Board would have been required to apply *Kraft Foods* here; it could not have changed its mind consistent with the Act. *Butler Lime & Cement Co. v. OSHRC*, 658 F.2d 544, 549 (7th Cir.1981); *Chicago & Northwestern Transportation Co. v. United States*, 574 F.2d 926, 930 (7th Cir.1978). We came to no such conclusion, however. Our opinion expressed doubt about the propriety of reinstating Hatfield. 674 F.2d at 623. We did not direct the Board to use the *Kraft Foods* test because it was the only permissible test; it was simply the one the Board favored at the time.

 The Board is free to change course, provided the new course is within its legal power. See *American Trucking Ass'ns, Inc. v. Atchison, Topeka & Santa Fe Ry.*, 387 U.S. 397, 416, 87 S.Ct. 1608, 1618, 18 L.Ed.2d 847 (1967). *Weingarten* itself was a dramatic change of policy by the Board. For decades the Board had declined to require employers to admit union representa-tives to disciplinary interviews. See 420 U.S. at 264, 95 S.Ct. at 967. The Court concluded that the new policy was permissible. *Id.* at 265–67, 95 S.Ct. at 967–68. So there is nothing wrong with new policy. And any change of policy will be reviewed sooner or later, as the Union has asked for review in this case. The question is whether the Board must ask the court's permission before applying the new policy to a case pending on remand from the court.

 If the Board had asked us in 1984 for permission to apply the *Taracorp* policy to this case, we would have had three options: to forbid use of the policy on the ground of law of the case; to review the legal basis of the *Taracorp* policy on the spot and permit its application only if it was consistent with the Act; and to permit the Board to apply its current policy subject to later review at the behest of any aggrieved party. The first option would have been unthinkable, because our decision in 1982 did not resolve any dispute between the parties about the legal basis of the *Kraft Foods* policy. The doctrine of law of the case does not prevent an agency from reexamining a policy that was not squarely presented for resolution; indeed, even if this court had sustained the *Kraft Foods* policy against legal challenge, this would not have prevented the Board from singing a different tune. See *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 144–46, 60 S.Ct. 437, 442–43, 84 L.Ed. 656 (1940). Judicial review of the Board's orders permits correction of legal mistakes, and once any mistake has been exposed further proceedings are in the Board's charge. *South Prairie Construction Co. v. Operating Engineers*, 425 U.S. 800, 805–06, 96 S.Ct. 1842, 1844–45, 48 L.Ed.2d 382 (1976). Nothing we said in 1982 preempted the Board's reconsideration.

The second option is immediate consideration of the new policy's legal status. Yet examination of the legal basis of *Taracorp* would have been premature. A court could not tell when the Board asks for leave to apply a new policy whether the difference between old and new policies would change

the outcome. If the two policies produce the same result, a discourse on the legality of the new policy would be wasted effort in the service of an advisory opinion. That leaves the third option, to grant leave as of course and to review the new policy, once the Board has entered a final order, if it spells the difference in outcome. See *E.I. DuPont de Nemours & Co. v. NLRB*, 733 F.2d 296, 297–98 (3d Cir.1984); see also *Woodkraft Division, Georgia Kraft Co. v. NLRB*, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984) (vacating 696 F.2d 931 (11th Cir.1983), and remanding to allow the Board to reconsider a "final" decision, which the Board would not have seen otherwise).

■ If a request by the Board for leave to apply a new policy on remand would be granted automatically, then there is no point in requiring the Board to seek leave. Gone are the days when courts required useless requests. For example, it used to be necessary to obtain an appellate court's permission before asking the district court to set aside a judgment for fraud, if the judgment had been affirmed. It was thought that the district court could not undo the appellate mandate, even on account of circumstances the appellate court had not known. Such leaves either would be granted automatically or would require the appellate court to hold a hearing, a task for which it is unsuited. Today a district court may inquire into fraud without the leave of the appellate court. *Standard Oil Co. of California v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976). So it is with requests by the Board to apply a new rule on remand. Appellate courts would either grant these automatically or be impelled into premature consideration of the merits of the proposed new rule. Neither is desirable, and therefore an application for leave is unnecessary.

## II

■ The Board's decision in *Taracorp* rests principally on its construction of a proviso to § 10(c), which provides in part that "[n]o order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any backpay, if such individual was suspended or discharged for cause." The Board accepted the view of *NLRB v. Potter Signal*, 600 F.2d 120 (8th Cir.1979) and *NLRB v. General Motors*, 674 F.2d 576 (6th Cir. 1982) that the proviso bars reinstatement when the employee has been fired for the misconduct that was discussed or revealed in the interview.

We are not so sure as the Board that the proviso to § 10(c) precludes reinstatement. Certainly if an employee is "discharged for cause" the Board's hands are tied. "Discharge for cause" has two components, however. First there must be "cause," which in § 10(c) means misconduct and not just a "good reason." See *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 215–17, 85 S.Ct. 398, 405–06, 13 L.Ed.2d 233 (1964); cf. *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 45–46, 57 S.Ct. 615, 628, 81 L.Ed. 893 (1937). Next there must be a causal link between the misconduct and the discharge ("discharged *for* cause"). If Illinois Bell had fired Hatfield for joining the Union, and later had made a serendipitous discovery that she had made some unauthorized long distance calls, this would not block the Board from awarding relief. So, too, if Illinois Bell had fired Hatfield for two reasons—for having the temerity to ask for the presence of a union representative as well as for the calls—the Board could order make-whole relief unless Illinois Bell could show by a preponderance of the evidence that she would have been fired for the calls alone. *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983).

■ The Court held in *Transportation Management* that the Board may establish presumptions about causal chains and require employers to overcome these presumptions. This implies that the Board could presume in cases under *Weingarten* that, but for the violation of the Act, the employer would not have discharged the employee. If there is a violation, the

Board may throw the burden of persuasion on the employer under *Transportation Management*. And the proviso does not prevent the Board from insisting that the employer discharge this burden without using the "fruit" of the violation, the confession during the interview. Section 10(c) does not speak to burdens of persuasion, fruits of violations, exclusionary rules, and the other paraphernalia of trials and inferences. The Board may fill interstices with a reasoned approach, as the Court concluded in *Transportation Management* itself. 462 U.S. at 402–03, 103 S.Ct. at 2474. Unless the structure and history of the Act put a construction off limits, the Board may choose among reasonable constructions. *NLRB v. Action Automotive, Inc.,* — U.S. ——, 105 S.Ct. 984, 988, 83 L.Ed.2d 986 (1985).

In *Fibreboard* the Court allowed the Board to order reinstatement of discharged employees notwithstanding their dismissal for the "cause" that there was no work for them to do. There is a strong argument that the Board has discretion to shift the burden to the employer and apply an exclusionary rule, as it did in *Kraft Foods*. Few subjects are as debated and difficult as determining what things "cause" what other things. See, e.g., H.L.A. Hart & Tony Honoré, *Causation in the Law* (2d ed. 1985). "But-for cause," "necessary conditions," "sufficient conditions," and the other words of art may obscure more than they explain. See Landes & Posner, *Causation in Tort Law: An Economic Approach,* 12 J. Legal Studies 109 (1983). The Board is not tied to one approach by which to assess whether a person was dismissed "for" misconduct. We need not decide whether the *Kraft Foods* policy is a permissible reading of the Act, or the *Taracorp* policy an inevitable one, because the *Taracorp* policy may be sustained as a reasoned selection among the remedies open to the Board.

### III

If the Board finds that any person has violated the Act, it "shall issue ... an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement with or without backpay, as will effectuate the policies of this Act". Section 10(c), 29 U.S.C. § 160(c). The opinion in *Taracorp* states (273 N.L.R.B. No. 54 at 8–9):

> Even if this Board were not bound by the various remedial limitations [of § 10(c) ], we would find a make-whole remedy in *Weingarten* cases inappropriate because we believe that past Board decisions have exceeded the intended scope and limitations found in the Supreme Court's *Weingarten* decision. What began as a limited protection of employees and a potential guide to management in conducting fair and expeditious investigations of employee misconduct has become a labyrinth of rules and procedures analogous to the law of criminal procedure....
>
> We believe that the expansionist approach to *Weingarten,* including make whole remedies, has served to assure that the adversarial nature and complexity of the investigatory process would increase until employers are tempted to forgo interviews altogether. We believe that, in the long run, our refusal to grant make-whole remedies for *Weingarten* violations will serve the interests of the entire labor-management community.

The Union calls this an afterthought, insufficient to support the decision in *Taracorp*. It is not an afterthought. It is an independent ground of decision. If an agency states two grounds of decision, each sufficient, a court should sustain the decision if either reason is correct. *Bowman Transportation v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 286–87, 95 S.Ct. 438, 442–43, 42 L.Ed.2d 447 (1974). Only when the Board states but a single incorrect ground, as in *Prill v. NLRB,* 755 F.2d 941 (D.C. Cir. 1985), or concludes that it has been compelled to adopt a policy it prefers to avoid, will the removal of that ground require a remand for further consideration. See

*Massachusetts Trustees v. United States,* 377 U.S. 235, 248–49, 84 S.Ct. 1236, 1251–52, 12 L.Ed.2d 268 (1964). We know how the Board wishes to exercise any discretion it may have. A remand would be pointless. See *Illinois v. ICC,* 722 F.2d 1341, 1348–49 (7th Cir.1983).

■ Section 10(c) requires the Board to order violators to "cease and desist" from their unlawful conduct, but it leaves in the Board's charge the selection of any "affirmative action" that will "effectuate the policies of" the statute. The statute does not compel reinstatement or the award of back pay. We wrote above of the Board's discretion to interpret the statute, to put into action a plan that can be no more than a sketch on the printed page. The Board's discretion to interpret the Act is limited by the fact that the words and history of the statute set boundaries, which courts patrol. Section 10(c) gives the Board quite a different kind of "discretion." The power to select "affirmative action" is not a power to interpret but a power to execute. The meaning of the statute is that the Board chooses; it is this choice, the fact of discretionary action, for which Congress has provided. This sort of discretion is scarcely reviewable at all, because the agency's decision *is* the implementation for which the law calls. See *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142 (1973); *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 187–89, 61 S.Ct. 845, 849–50, 85 L.Ed. 1271 (1941); cf. *NLRB v. Bridge & Ornamental Ironworkers,* 466 U.S. 720, 104 S.Ct. 2081, 80 L.Ed.2d 715 (1984).

*Taracorp* sets up a graduated approach to remedies. If the employer violates *Weingarten* by excluding the union's representative from a disciplinary interview and fires the employee solely because of the employee's misconduct, the Board enters only a cease and desist order. Repeated violations of *Weingarten* will offend against that order, and few employers wish to incur the penalty, a citation for contempt of court. So repeated violations are handled more harshly than isolated violations. If the employer's initial violation is egregious—that is, if the employer fires the employee in part because he requested the assistance of his union—then *Taracorp* does not apply (so the Board's counsel stated at oral argument), and the Board will use its *Transportation Management* policy. The employee wins reinstatement with back pay unless the employer persuades the Board that it would have fired the employee even without the improper motive. This amounts to a continued application of the *Kraft Foods* policy to dual-motive discharges.

This is a reasoned approach. It means that those who violate the Act repeatedly, or with worse motives, receive harsher sanctions. If "even a dog distinguishes between being stumbled over and being kicked" (O.W. Holmes, *The Common Law* 3 (1881)), the Board may make the same sort of distinction. Repeat violations also call for stiff treatment because the repetition reduces the chance that a single violation was a mistake—on the part of a subordinate employee who did not follow management's wishes (as the employee who interrogated Hatfield may not have) or on the part of the Board in finding a violation where there was none. Multiple violations are more likely to reflect the management's considered choice and to be real rather than imagined.

The Board mentioned that the elimination of reinstatement and back pay for isolated violations of *Weingarten* will reduce the incentive of management and union to act as adversaries, and again this is a permissible consideration. The availability of back pay and reinstatement raises the stakes of any dispute; higher stakes make it worthwhile to have more disputes (and to fight harder in each). This is a real cost that the Board may consider, as managers and unions will. See *Camacho v. Ritz-Carlton Water Tower,* 786 F.2d 242, —— - —— (7th Cir. 1986). In *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Court held that a union need not take every grievance to arbitration, in part because a union sensibly may elect to reduce

the level of contentiousness and in part because a persistent use of the maximum leverage granted by contract may lead the employer to withhold arbitration in the future (or extract greater concessions for an arbitration clause). The Board expressed a similar concern here: if back pay and reinstatement follow inexorably from violations of *Weingarten,* employers may respond by holding fewer interviews and acting on suspicion without offering the employee the opportunity to explain. Employees as a group would not find this comforting.

The Union reminds us that reinstatement and back pay are the Board's usual remedies, employed "as a matter of course—not randomly or in the exercise of a standardless discretion, and not merely where employer violations are peculiarly deliberate, egregious, or inexcusable." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 419–20, 95 S.Ct. 2362, 2372–73, 45 L.Ed.2d 280 (1975) (dictum). See also *NLRB v. Rutter-Rex Mfg. Co.,* 396 U.S. 258, 263, 90 S.Ct. 417, 420, 24 L.Ed.2d 405 (1969); *Phelps Dodge, supra,* 313 U.S. at 197, 61 S.Ct. at 854. The historical practice is not so uniform, however. Until 1977, when it decided *Certified Grocers,* the Board used only cease and desist orders as remedies for employers' failure to allow union representatives to attend disciplinary interviews. When the Supreme Court approved the Board's position in *Weingarten,* it did not urge the Board to employ stronger sanctions. As policies of the Board go, the *Certified Grocers* and *Kraft Foods* doctrines had relatively short lives—too short to be treated as if incorporated in the Act. The *Weingarten* doctrine is itself a recent one, and when endorsing the Board's decision the Court remarked on the Board's discretion to change the implementation of the Act. 420 U.S. at 264–67, 95 S.Ct. at 967–68. The Court has since treated *Weingarten* as an example of the Board's authority to decide certain questions either way. *Transportation Management, supra,* 462 U.S. at 402–03, 103 S.Ct. at 2474–75. So the Board's power, capacious in the usual case, is enlarged here by the princi-

ple that who controls the right may choose the remedy. E.g., *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *In re Klein,* 776 F.2d 628, 635 (7th Cir.1985). The Board's decision is

ENFORCED.