NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0058n.06
Filed: October 29, 2004

**No. 03-1586**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MICHIGAN BELL TELEPHONE CO., d/b/a )
AMERITECH MICHIGAN, )
                                  )
    Plaintiff-Appellee, )
                                  )
v. )  On Appeal from the United States
                                  )  District Court for the Eastern
JOHN G. STRAND; DAVID A. SVANDA, )  District of Michigan
Commissioners of the Michigan Public Service )
Commission, in their official capacities, )
                                  )
    Defendants-Appellants, )
                                  )
BRE COMMUNICATIONS, L.L.C., d/b/a PHONE )
MICHIGAN, )
                                  )
    Defendant. )

---

**Before:**    **BOGGS, Chief Judge; DAUGHTREY and COOK, Circuit Judges.**

        **BOGGS, Chief Judge.**  Defendant, the Michigan Public Service Commission (the

"MPSC"), appeals from an order of the district court enjoining enforcement of the MPSC's order

against plaintiff, Michigan Bell Telephone Co., d/b/a Ameritech Michigan ("Ameritech"), on the

grounds that the district court exceeded the scope of this court's mandate on remand. We affirm the

district court's order.

        This appeal is the second appearance of this action before this court, and the only issue this

time is whether the district court correctly carried out the mandate we issued in 2002. *See Michigan*

No. 03-1586

*Bell Telephone Co. v. Strand* ("*Michigan Bell I*"), 305 F.3d 580 (6th Cir. 2002). The action arose from the MPSC's Order and Opinion of February 9, 1999 (the "Order"), which resolved a dispute between Ameritech and BRE Communications, L.L.C., d/b/a Phone Michigan ("BRE").

BRE is a competing local exchange carrier ("CLEC") attempting to gain entry into the market served by Ameritech, the incumbent local exchange carrier ("ILEC"). Ameritech and BRE have entered into an interconnection agreement (the "Agreement"), as required by the federal Telecommunications Act of 1996 ("FTA"), 47 U.S.C. § 151 *et seq.*, whereby Ameritech allowed BRE access to its network in order to compete with Ameritech. BRE complained to the MPSC that Ameritech had violated the FTA (and/or the analogous Michigan statute, the "MTA") and the Agreement by assessing special construction charges to BRE for disaggregating bundled loops.[1]

The MPSC agreed with BRE, finding that the special fees charged by Ameritech violated the Agreement and the FTA/MTA in two different ways. First, because Ameritech did not charge special fees to individual retail customers who needed new construction, charging such fees to BRE was held to be discriminatory. Second, because the construction costs were the type of expenses contemplated as being covered by Ameritech's regular charges to BRE, payment of the special

---

[1] A loop connects an end-user's telephone, modem, or fax with his telephony carrier's switch. When the FTA was enacted, only one end-user's signal could be carried on a single loop; to change the user's carrier, the ILEC simply jacked that loop to the CLEC's switch. Modern technology allows a carrier to "bundle" signals from many different end-users onto the same pair of feeder wires (the final leg of a loop). But bundled signals cannot be assigned to different switches, so the ILEC must disaggregate (or "demultiplex") the end-user's signal from the bundle and assign it to a different pair of feeder wires. This operation sometimes requires installing a new pair of feeder wires at considerable expense. Ameritech has charged that expense to BRE.

charges would give Ameritech a double recovery for the same costs. The MPSC denied money

damages, but issued a five-part order requiring Ameritech to:

Cease and desist from imposing the special charges (¶ A);

Cease and desist from requiring BRE to waive its dispute-resolution rights under the Agreement as to said charges (¶ B);

Refund and cancel paid or pending charges (¶ C);

Pay attorney's fees (¶ D); and

Pay Michigan a $40,000 fine for violating the anti-discrimination provisions of the MTA and another $2000 each for 65 special charges, totaling $170,000 (¶ E).

Ameritech then brought this action against the MPSC to enjoin enforcement of the Order.

The district court upheld the Order, and Ameritech appealed. In *Michigan Bell I*, we affirmed as to

the MPSC's factual finding that Ameritech's special charges gave a double recovery, but reversed

as to the legal holding that the charges were discriminatory within the meaning of the FTA.

*Michigan Bell I*, 305 F.3d at 589, 593. In conclusion, we ordered:

The MPSC's order . . . is based on a flawed interpretation of the nondiscrimination requirement of federal law. Accordingly, the district court's judgment must be reversed and remanded with instructions to enjoin the enforcement of the MPSC's order *insofar as it relies on this flawed interpretation* of the nondiscrimination requirement.

*Ibid.* (emphasis added).

On remand, the district court issued the following order on April 1, 2003:

1.  Enforcement of the [Order], is ENJOINED insofar as it relied upon the MPSC's flawed interpretation of the [FTA's] nondiscrimination requirement;

2.  Enforcement of paragraph A of the [Order], relating to Ameritech Michigan's imposition of special construction charges, is ENJOINED;

3.  Enforcement of paragraph B[2] of the [Order], as it relates to the refund or cancellation of special construction charges already imposed; [sic] is ENJOINED; and

4.  Assessment of $40,000 of the $170,000 fine . . . is ENJOINED.
    The [MPSC] is directed to reconsider its finding of discrimination according to the appropriate standard.

The district court's order could perhaps have been more clearly phrased: it enjoins the Order as a whole insofar as the Order is based on the MPSC's discrimination finding, but paragraphs 2 and 3 could be read as enjoining without qualification the primary remedies in the Order. The MPSC reads the district court's order in just that way, and appeals as to those paragraphs only.

The district court's order, if read as the MPSC does, would be improper for at least two reasons. First, the district court had no power to affect the MPSC's finding that Ameritech's special charges amounted to double recovery, as that finding was already upheld by the district court and affirmed by this court. *See United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999) (district court is bound to the scope of this court's remand). Thus, insofar as the MPSC's remedies were based on that finding, the district court had no power to enjoin their enforcement. Secondly, the federal courts have no power to prevent the MPSC from reconsidering its position in light of the correct interpretation of discrimination law and instituting similar or identical remedies on a

_____

[2] This is evidently a typographical error, as the remedy enjoined appears in paragraph C of the Order rather than paragraph B.

No. 03-1586

different basis. *See Youghiogheny & Ohio Coal Co. v. Milliken*, 200 F.3d 942, 950 (6th Cir. 1999)

(" 'once any [legal] mistake has been exposed, further proceedings are in the [agency's] charge,' ");

quoting

*Communication Workers of America v. NLRB*, 784 F.2d 847, 849 (7th Cir. 1986); *cf. Faries v.*

*United States Dep't of Labor*,  909 F.2d 170, 173 (6th Cir. 1990) (where agency proceedings yielded

findings and dispositions under each of two interpretations of the law, federal court need not remand

for further agency proceedings but may simply enforce the agency result consistent with the correct

view of the law).

However, it is unlikely that the district court meant to abandon such well-settled principles.

We read the district court's order as applying the qualifier in paragraph 1, "insofar as it relied upon

the MPSC's flawed interpretation," to paragraphs 2 and 3 as well.  On  this reading, we

find no error in the district court's order.  The MPSC shall carry out the district court's order as so

construed.

For the reasons stated, we AFFIRM the order of the district court.