**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ILLINOIS BELL TELEPHONE COMPANY, Respondent.**

**No. 80–2629.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1981.

Decided March 17, 1982.

Rehearing Denied June 8, 1982.

Paul J. Spielberg, Elliott Moore-N.L.R.B., Washington, D.C., for petitioner.

Stephen S. Schulson, Ill. Bell Telephone, Chicago, Ill., for respondent.

Before BAUER, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and BROWN,* Senior District Judge.

WESLEY E. BROWN, Senior District Judge.

Now before us is the application of the National Labor Relations Board for enforcement of its Order against the Respondent, the Illinois Bell Telephone Company. The Board found that the Company acted unlawfully in denying requests made by two of its employees for union representation during interviews conducted by the Company during an investigation into the billing of charge calls made from the Vandalia, Illinois Rehabilitation Center, a facility housing state prisoners.

Following an evidentiary hearing on the Complaint, the Administrative Law Judge found that the Company had violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), by denying the

---

* The Honorable Wesley E. Brown, Senior District Judge of the District of Kansas, is sitting by designation.

rights of its employees, Hatfield and Wimberly, to be assisted by a union representative of their choice during investigative interviews, contrary to standards set out in *N. L. R. B. v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975).[1] Upon such finding the Administrative Law Judge ordered the Company to cease and desist from conducting such interviews in the absence of employee representatives when requested, ordered the posting of usual notices, and in addition ordered reinstatement, with back pay for the employee Cary Ann Hatfield.

The National Labor Relations Board adopted the findings of the Administrative Law Judge, including findings based upon credibility, ordered reinstatement with back pay for Hatfield, and in addition, ordered the Company to expunge from its files all records and references relating to the unlawful suspension and discharge of Ms. Hatfield. In this action, Illinois Bell has cross-petitioned to set aside the Board's Order, contending that its due process rights were violated when the Board found that it violated the National Labor Relations Act in a manner not alleged in the Complaint; that the Board erred in applying *N. L. R. B. v. J. Weingarten, Inc., supra*, to the situation in this case; that Section 10(c) of the Act prohibits the Board from ordering reinstatement of an employee discharged for cause; and that there is no substantial evidence to support the findings that Hatfield did not waive her right to union representation, and that Wimberly requested union representation.

Giving full effect to the credibility findings of the Administrative Law Judge, as adopted by the Board, the following pertinent facts give rise to this proceeding. Cary Ann Hatfield and Rebecca Wimberly were employed as long distance operators at the telephone exchange operated by the Company in Centralia, Illinois. Switchboard operators there are represented by the Communications Workers of America, Local 5008. In March, 1978, James Lawshe of the Company began to investigate information received from prison officials at the Vandalia Rehabilitation Center to the effect that operators at the Centralia exchange were "adjusting" charges on long distance calls made by prisoners at Vandalia. Inmates there were permitted to make "collect" long distance calls out of the facility through the Centralia exchange. On February 28, Rebecca Wimberly told Cary Hatfield that she had received a call from a Vandalia inmate who told her that a Bell Company investigator was coming from Chicago to talk to the Centralia operators and that Hatfield and another employee might lose their jobs. Hatfield then phoned her union steward, Jan Kirwan, who advised her not to go into any interview alone, and that any union member could serve as her representative. On March 1, Hatfield was interviewed by James Lawshe, a security agent for the Company, who informed her that he was investigating toll calls being placed by Vandalia prisoners through the Centralia exchange. Hatfield informed him she wanted a union representative to be present, he assented, and she went in search of one. The union steward Kirwan was not available because she worked another shift, but Hatfield requested that Cheryl Simonton, a former assistant union steward, be allowed to attend the interview. When Lawshe learned that Simonton was not a current union steward, he refused to allow her to represent Hatfield. The interview then proceeded without a union representative or member being present, and Hatfield ultimately signed a written statement admitting that she had reduced time charges on five or six calls for Vandalia prisoners and that she had made about five long distance calls to a friend in California free of charge.

1. In the Complaint filed by the Director, the Board alleged that the Company had violated Section 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (3) in that Illinois Bell unlawfully denied union representation to two of its employees during disciplinary interviews, and that it suspended and then discharged Cary Hatfield because she insisted upon union representation at a disciplinary interview. The Company contended that both employees waived their rights to representation at the interviews in question and that Cary Hatfield was discharged for cause.

The following day, March 2, Lawshe interviewed employee Wimberly. After Lawshe advised that he was investigating toll calls placed for Vandalia prisoners, Wimberly then asked, "Should I have someone in here with me, someone from the union?", Lawshe replied, "No, it is not necessary as long as you are honest with me." (Tr. 55). The interview then proceeded for approximately two hours, without representation for Wimberly. No disciplinary action was taken against Wimberly.

On March 7, the District Manager for Illinois Bell reviewed the Hatfield case and decided she should be discharged. On March 9th, Hatfield was called in and formally discharged by the Company.

Based on these facts, the Board found that the Company had violated Section 8(a)(1) by requiring employees Hatfield and Wimberly to participate in investigatory interviews without the presence of a union representative, despite the requests of the employees. The Order sought to be enforced requires the Company to cease and desist from engaging in these unfair labor practices or coercing its employees in the exercise of statutory rights. In addition, the Order requires the Company to offer Hatfield reinstatement, with back pay, and to expunge from its records all references to disciplinary action arising out of the events of the March 1 interview, including the statement Hatfield gave at this interview. The Order also requires the posting of appropriate notices.

We uphold the findings of Section 8(a)(1) violations in the case of both Hatfield and Wimberly, but remand to the Board for further consideration the remedy to be imposed in the case of Hatfield.

■ Initially, the Company contends that it was denied due process of law because the Complaint filed in the proceeding did not raise the issue of whether or not an employee was entitled to the presence of a fellow union member—as opposed to a union official—at an investigatory interview. A review of the transcript of the administrative hearing establishes, however, that the Company was in fact aware that this

was an issue before any evidence was introduced at the hearing, because counsel for the Company raised the issue in his preliminary statement. Under such circumstance, the Company was not prejudiced and its constitutional right to due process was not violated.

■ The Company contends that Hatfield waived whatever rights she may have had to representation by agreeing to continue with the interview after it appeared that the union steward was not present on the premises. On this issue the Administrative Law Judge credited Hatfield's testimony over that of Lawshe, concluding that:

> Under the facts in their record, when Miss Hatfield's selection of a representative was refused, she was not informed that she might terminate the interview or suspend it until a Union officer could be present. She was detained alone in the locus of managerial authority, peppered repeatedly with hostile questions, and threatened with criminal prosecution.... Such elements in this interview do not support a contention of waiver. They smack of oppression in the face of a studied reluctance to proceed. Accordingly, there is utterly no foundation for the Respondent's argument that Miss Hatfield freely and voluntarily waived her right to representation by continuing to answer the questions which Lawshe posed to her.

The Board accepted and adopted these findings. They are supported by substantial evidence and therefore the finding of no waiver must stand.

The Company further contends that it did not deny the employee Rebecca Wimberly the right to union representation because she never requested it. In this respect it appears that after Lawshe announced the purpose of the interview, Wimberly asked him; "Should I have someone in here with me, someone from the union?" To this Lawshe replied: "No it is not necessary as long as you are honest with me." We find this to be a sufficiently direct request for union representation. Lawshe knew or

should have known that Wimberly had a right to the presence of a union official. Wimberly's question was sufficient to put him on notice of her interest in having "someone from the union" present during the interrogation.

Under the circumstances recited above, we find that there is substantial evidence in the record as a whole to justify the findings of the Board that Hatfield and Wimberly were denied representation at a meeting which they had reason to believe might result in disciplinary action by their employer. Clearly a union employee has a right to the presence of a union officer at an investigatory interview. *N. L. R. B. v. J. Weingarten, Inc., supra*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). In *Weingarten*, the Court pointed out that this right is protected under the provisions of Section 7 of the Act, 29 U.S.C. § 157 (95 S.Ct. 959, at 965):

> The action of an employee in seeking to have the assistance of his union representative at a confrontation with his employer clearly falls within the literal wording of § 7 that '[e]mployees shall have the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection.' . . . . This is true even though the employee alone may have an immediate stake in the outcome; he seeks 'aid or protection' against a perceived threat to his employment security. The union representative whose participation he seeks is, however, safeguarding not only the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly. . . .

In the case of Hatfield, the Company contends that she was not entitled to representation by Cheryl Simonton who, at the time of the interview, had no official status with the union. It is the Company's view that Hatfield's selection of a "rank and file" union member, who could not be expected to have the knowledge or expertise that union officers have, would have offered no protection during the interview, and hence, Hatfield had no right to request the presence of Simonton at the meeting. It should be noted at this point, however, that Simonton did have some expertise, in that, she was a former union officer, and since the actual union steward did not work an evening shift with Hatfield it was reasonable for Hatfield to request her aid. Furthermore, there was no evidence that the collective bargaining agreement applicable to the Centralia facility contained any provision which would waive an employee's right to request a representative other than a union officer. In any event, the facts establish that Lawshe refused to terminate the interview, and made no effort whatsoever to locate a union steward once Hatfield clearly invoked her right to have a union representative present. According to the testimony of Cary Hatfield, which was credited by the Board, the following transpired (Tr. pp. 23–24):

> I told Mrs. Neipoetter I would like Cheryl Simonton in the meeting with me. She said, 'O.K. I'll ask her. Go back to the meeting.' So I went back to the room; the phone rang; Mr. Lawshe picked up the phone and he said, 'No, Cheryl is not a designated union representative. She will not be allowed to enter the room.' I said, 'Well, that is not the way I understood it. I was told that any union member can come in and take notes and serve as a representative,' and he goes 'Well, that is not the way I understand it to be, o.k. Well, back to the subject' . . . . he proceeded with his questioning, asking me my association with the inmates at the Vandalia Correctional Center. He asked me how many I knew. I said I knew three or four . . . I wasn't given an opportunity whether to proceed with or without representation or to not proceed at all.

■ Under the circumstances described above, we find that there is substantial evidence in the record as a whole to support the findings of the Board that both Hatfield and Wimberly requested appropriate representation at their interviews, but that their requests were denied by the Company, in violation of Section 8(a)(1) of the Act.

We believe, however, that the determination of the Board that the proper remedy in the case of Hatfield should include reinstatement and back pay is incorrect upon this record. It is clear that Hatfield was not discharged for requesting union assistance during the interview. If this had been the case, an order of reinstatement with back pay would be an appropriate remedy for denial of rights of employees protected by Section 7 of the Act, 29 U.S. C.A. §§ 157, 158(a)(1). See *International Ladies Garment Wkrs. U. v. Quality Mfg. Co.*, 420 U.S. 276, 95 S.Ct. 972, 43 L.Ed.2d 189 (1975). Instead, the record here establishes that the Company discharged Hatfield for cause, upon a belief that she had been dishonest in the matter of billing toll calls.

Section 10(c) of the National Labor Relations Act, 29 U.S.C. § 160(c) specifically provides that:

No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, *if such individual was suspended or discharged for cause.* (Emphasis supplied.)

In the recent case of *N. L. R. B. v. Potter Electric Signal Co.*, 600 F.2d 120 (8th Cir. 1979) the Court denied enforcement of that part of a remedial order which provided for reinstatement and back pay for employees who were discharged for fighting on the production line. In that case, the Board found that the Company had violated Section 8(a)(1) of the Act by requiring the two employees to attend investigatory interviews following the fight, without the presence of their union steward after they had requested his presence. The Court found that while the Company had violated the Act with respect to the interview, the employees were not discharged because they requested union representation, but because of the fight which resulted in shutting down the production line. See also *Montgomery Ward and Co., Inc. v. N. L. R. B.*, 664 F.2d 1095 (8th Cir. 1981) where employees were discharged for theft, reinstatement with back pay was found to be an inappropriate remedy.

In this case, the Company had a legitimate concern in the integrity of its toll system, and was entitled to fully investigate the security of its billing procedures at the Centralia Exchange. A review of the evidence suggests that Hatfield's discharge was not based solely upon her written statement which was obtained during the unlawful interview, for it does appear that the Company had independent evidence obtained from prison officials at the Vandalia Rehabilitation Center.

In order to balance the need of the Company to maintain an honest and efficient workforce, with the duty to enforce the polices of the Act, we believe that Illinois Bell is entitled to show that its discharge of Hatfield was not solely dependent upon evidence obtained from her during the unlawful interview, but that that discharge is and was supported by other independent evidence which was available to the Company at the time of the discharge. Upon this record, we can not say that there is substantial evidence to support a finding that Hatfield's discharge stemmed solely from the Company's unfair labor practice of forcing her to participate in an interview without representation.

For these reasons, we enforce the Board's Order in all respects except as to reinstatement, back pay, and expungement of Hatfield's discharge record. Enforcement of those portions of the Order relating to Hatfield is denied, and the case is remanded to the Board for such further proceedings as may be required to determine whether independent evidence sufficiently supported the Company's discharge of Hatfield for cause.