**NATIONAL LABOR RELATIONS
BOARD Petitioner,**

v.

**NEW JERSEY BELL TELEPHONE
COMPANY Respondent,**

**Local 1022, Communications Workers
of America, AFL–CIO Intervenor.**

**Nos. 90–3857, 91–3060.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
June 7, 1991.

Decided June 25, 1991.

As Amended June 28, 1991.

James F. Brady, New Jersey Bell Telephone Co., Newark, N.J., for respondent.

Howard E. Perlstein, Richard A. Cohen, N.L.R.B., Washington, D.C., for petitioner.

Ellen Dichner, Gladstein, Reif & Meginniss, New York City, for intervenor.

Before SLOVITER, Chief Judge, and GREENBERG and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

New Jersey Bell Telephone Company ("Bell") appeals from a National Labor Relations Board ("Board") finding that Bell committed two unfair labor practices arising out of circumstances surrounding the five day suspension of one of its employees. In light of the appropriate standard of review of decisions of administrative agencies, we enforce the Board's Decision and Order.

### I. *Background*

In response to a customer's complaint concerning calls to her unlisted number, a Bell security representative, Lorraine Vasilik, discovered that a Bell customer service representative, Elizabeth Lynch, had accessed that customer's account without authorization.

On November 4, Vasilik and one other security representative interviewed Lynch concerning access to the account to determine whether Lynch had disclosed the unlisted number without authorization. At the outset of that encounter, Lynch asked whether she should have a union representative present.[1] Vasilik told her to wait until the security representatives had explained the purpose of the interview, and then make up her mind concerning whether or not she wanted a union representative. Vasilik then proceeded to tell Lynch that they were interested in the account Lynch

---

1. Carmine Inteso, the other security representative who was present during the interview, testified that as soon as Inteso and Vasilik had introduced themselves as security representatives: "[Lynch] asked if she should have a union rep present." Appendix ("App.") at 168a. Inteso later testified that "[Lynch] asked when she first came in the room only that should she (sic) have a union rep present." *Id.* at 170a.

had accessed. The Administrative Law Judge found "Vasilik did not pause nor ask Lynch whether now that she knew the purpose of the interview, did she wish union representation." Appendix ("App.") at 27 (opinion of the Administrative Law Judge ("ALJ")).[2] Instead, Vasilik immediately asked Lynch whether she could tape the interview.[3]

After Vasilik presented Lynch with evidence of the access, in the form of computer records called "Note Screens," Lynch admitted that she had accessed the account. Lynch denied that she had disclosed the unlisted phone number. However, at the end of the interview, Lynch signed a statement confessing both to accessing the account and to disclosing the telephone number. Lynch initially maintained that she had not disclosed the number, and had signed the statement without realizing that an admission was contained in it. *See* App. at 28, 31 (Decision of the Board), 111–15 (Lynch Testimony), 279–80 (Tovey Testimony).

Five days after the interview, the same customer complained to Vasilik that she had been called by Lynch. Vasilik made a handwritten report of this conversation which became a part of the Security Report, but neither reported the conversation to local management nor discussed the conversation with Lynch.

On November 16, Lynch's manager, Anne Tovey, prepared a memo reporting the information gathered in the Security Report. Based solely on that memo, Bell's Director of Business Services concluded that a five day suspension was warranted. After Tovey imposed the suspension, Lynch's union, Local 1022, Communications Workers of America ("CWA"),[4] filed a grievance on Lynch's behalf. CWA requested full copies of both the Security Report and the Note Screens to facilitate its processing of the grievance. In response to this request, Tovey gave CWA only the second of two pages of the Note Screens. Tovey considered the Security Report confidential, and the first page of the Note Screens irrelevant to the processing of the grievance.

After Bell denied further CWA requests for the withheld information, unfair labor practice charges were filed with the Board. The charges alleged that the denial of a union representative during the November 4 interview violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. §§ 157–160 ("NLRA" or "Act"), and that Bell's refusal to furnish the requested information violated Sections 8(a)(1) and (5) of the Act.

The Board unanimously concluded that Bell violated Lynch's *Weingarten* right to have a union representative present during an investigatory interview. *See infra* p. 148 (discussing *National Labor Relations Board v. J. Weingarten, Inc.,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1974)). A majority of the three member panel also concluded that Bell violated Section 8(a)(5) of the Act by refusing to provide page one of the computer Note Screens and the security investigative report.

## II. *Standard of Review*

■ The first issue for our consideration is the appropriate standard of review of Board determinations. The Board contends that the issue of whether Lynch made an adequate request for union representation during the interview is purely a question of fact, and therefore should be considered conclusive if it is supported by "substantial evidence on the record as a

---

**2.** Inteso testified that Vasilik

> started to explain to [Lynch] that we have a problem with her accessing an account.
> Q. Now did Ms. Lynch respond to that at all?
> A. I wouldn't recall what the response is. Probably what, you know, what do you mean, something of that nature. It started, it flowed right from there into an interview.

**3.** Inteso testified that his standard operating procedure when an employee asked whether a

union representative should be present was to tell the employee "that the decision is up to the employee, but he would require the employee to make the decision at the time the question was raised." App. at 27a n. 2; *see also* App. at 181a ("I won't proceed until they tell me yes or no."). There is no explanation in the record of why Inteso did not follow his ordinary procedure.

**4.** CWA is an intervenor in this appeal.

whole." 29 U.S.C. § 160(e). We do not entirely agree. We consider the question as one of mixed law and fact. Accordingly, we hold that the Board's finding that Lynch actually asked whether she should have union representation is one of fact. We also hold that that finding is supported by substantial evidence in the record.

The issue of whether Lynch's inquiry was sufficient to trigger *Weingarten* rights, *see infra* p. 148, constitutes a legal question concerning the construction of the NLRA which we deem is more appropriately viewed as a question of law. Similarly, the Board's conclusion that Bell violated the Act by refusing to provide CWA with requested information also concerns the Board's construction of the Act.

■ Our review of the Board's construction of the National Labor Relations Act is guided by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See American Hospital Association v. National Labor Relations Board,* — U.S. —, 111 S.Ct. 1539, 1544, 113 L.Ed.2d 675 (1991); *National Labor Relations Board v. United Food & Commercial Workers Union,* 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987); *see also Pension Benefit Guarantee Corp. v. LTV Corp.,* — U.S. —, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990) (citing *Chevron* as "set[ting] forth the general principles to be applied when federal courts review an agency's interpretation of the statute it implements"). *Chevron* provides a two-step inquiry. First, we must determine whether Congress has "spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter...." 467 U.S. at 842, 104 S.Ct. at 2781. Second, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the

statute." *Id.* at 843, 104 S.Ct. at 2782; *see also Department of the Navy v. Federal Labor Relations Authority,* 836 F.2d 1409, 1410 (3d Cir.1988) (acknowledging the *Chevron* standard, but limiting deference dictated by *Chevron* to an agency's interpretation of its own organic statute); *United States Department of the Navy v. Federal Labor Relations Authority,* 840 F.2d 1131 (3d Cir.1988) (same).

■ When the Board's construction of the Act is one permissible interpretation out of many, this court is not free to substitute its preference for that of the Board. *See Chevron,* 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11. Accordingly, under *Chevron,* the Supreme Court has "traditionally accorded the Board deference with regard to its interpretation of the NLRA as long as its interpretation is rational and consistent with the statute." *United Food and Commercial Workers Union,* 108 S.Ct. at 421. In addition, we must review the consistency with which the Board has applied the particular rule at issue. *See id.* at 421 n. 20; *see I.N.S. v. Cardoza Fonseca,* 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987) ("An additional reason for rejecting the INS's request for heightened deference to its position is the inconsistency of the positions the BIA has taken through the years."); *cf. West v. Bowen,* 879 F.2d 1122, 1134 (3d Cir.1989) ("We have often found consistency or lack thereof in an agency interpretation to be crucial in determining the degree of deference to be afforded that interpretation.").[5]

Thus, when reviewing Board orders, the court must address three discrete issues. First, the court determines whether the NLRA provides a clear rule to be applied in the case, and if so, whether the Board complied with the Act. If no clear rule is provided, the court then determines whether the NLRA permits the Board order that

---

**5.** Inconsistency with precedent will not alone invalidate a Board order. The court reasoned in *Communication Workers of America v. National Labor Relations Board,* 784 F.2d 847 (7th Cir.1986), the Board is free to change course provided the new direction is within the Board's power and also constitutes a reasoned ap-

proach. This Circuit has taken a similar tact. *See, e.g., District 1199P, National Union of Hospital and Health Care Employees, AFL–CIO v. National Labor Relations Board,* 864 F.2d 1096, 1103 (3d Cir.1989) ("Where the NLRB applies a doctrine in a radically new way, it is its responsibility to justify its conclusions.").

is the subject of the appeal. Finally, if the Board order is permissible, the court must review NLRB precedent to determine whether that order is consistent with such precedent.

The two statutory provisions at issue in this case are Sections 8(a)(1) and (5) of the NLRA, which state:

> (a) It shall be an unfair labor practice for an employer—
>
> > (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;[6]
> >
> > ....
> >
> > (5) to refuse to bargain collectively with the representatives of his employees
>
> ....

29 U.S.C. §§ 158(a)(1) & (5).

Bell does not contend that the unfair labor practice findings by the Board conflict directly with either of the above-quoted sections, or with the clear intent of Congress. *Cf. Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781. We therefore analyze both unfair labor practice findings in light of the second *Chevron* question, namely, whether the Board implemented a permissible interpretation of the Act, and for consistency with prior Board practice.

### III. *The* Weingarten *Violation*

As noted above, the Board unanimously concluded that Bell violated Section 8(a)(1) of the Act by infringing upon Lynch's *Weingarten* rights.[7] In *National Labor Relations Board v. Weingarten, Inc.,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1974), the Supreme Court approved the Board's construction of Section 7, *see supra* note 6, which interpreted that section as creating a statutory right in an employee to union representation in an interview,

when that employee reasonably fears that discipline may result from that interview. *See* 420 U.S. at 256, 95 S.Ct. at 963. This right is grounded in Section 7's guarantee of the right of employees to act in concert for mutual aid or protection. *See id.*

A prerequisite to finding a *Weingarten* violation is a determination that the employee expressed some desire to have a union representative present during the interview in question:

> the right arises only in situations where the employee requests representation. In other words, the employee may forgo his guaranteed right and, if he prefers, participate in an interview unaccompanied by his union representative.

*Id.* at 257, 95 S.Ct. at 963. The issue in the instant case is whether Lynch conveyed such a request.

The Seventh Circuit held, in *National Labor Relations Board v. Illinois Bell Telephone Company,* 674 F.2d 618 (7th Cir.1982), that the question "Should I have someone in here with me, someone from the union?" was "a sufficiently direct request for union representation" to trigger *Weingarten* rights. *Id.* at 621. The Seventh Circuit considered that construction of the Act permissible because the question puts the company on notice of the employee's interest in having a union representative present during the investigatory interview. *See id.* at 622. Once on notice that an employee desires representation, the company acts at its peril if it does not exercise one of three options: grant the employee's request for a representative, give the employee the option of either continuing the interview without representation or forgoing the interview, or, termi-

---

**6.** Section 7 of the Act states:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection....
>
> 29 U.S.C. § 157.

**7.** Bell does not argue that the Board's interpretation of the Act is an impermissible one. *See Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781. Indeed, Bell merely argues that "Board law does not *compel* the conclusion reached by the ALJ." Petitioner's Brief at 9 (emphasis added). Even if Bell is correct, under the case law discussed above, this argument is insufficient for Bell to prevail. The holding in *Chevron* indicates that the Board's interpretation need not be compelled by the law, only permitted by it.

nate the interview. *See Weingarten,* 420 U.S. at 280–81, 95 S.Ct. at 974–75.

■ The rationale of *Illinois Bell Telephone* is fully applicable to the present circumstances. As soon as the security representatives identified themselves, Lynch asked:

> What was she there for?; Why was security there? What's this all about?; Before receiving an answer to any of these questions, Lynch asked if she should have a union representative present?

App. at 27a. Both of the security representatives testified that Lynch's first words at the investigatory interview were to question whether she should have a union representative.[8] Additionally, the ALJ concluded:

> Thus, Vasilik in my view misled Lynch into believing that once the purpose of the interview was explained to her, she would have an opportunity to decide whether she wants representation, before the interview proceeded. Not only did Vasilik not ask Lynch at that point whether she now wished union representation or not, but charged ahead without even a hesitation to interrogate Lynch about matters under investigation.....
>
> Vasilik instead proceeded with the interview, without as much as a pause to permit Lynch to make a decision, that Vasilik had suggested to her that she would be able to make.

App. at 36a–37a. In light of the holding in *Illinois Bell Telephone Company,* and the particular facts of this case, we hold that the Board's finding of a Section 8(a)(1) violation is permissible under the Act.

Finally, the finding of an 8(a)(1) violation in these circumstances is consistent with prior Board decisions. *Cf. United Food and Commercial Workers Union,* 108 S.Ct. at 421 n. 20. The Board has consistently held that a request must only be ·sufficient to put the employer on notice that the employee desires representation. *See, e.g., Montgomery Ward & Co.,* 273

N.L.R.B. 1226, 1227 (1984); *Southwestern Bell Telephone Co.,* 227 N.L.R.B. 1223 (1977). In *Montgomery Ward,* the employee requested as his representative an individual who was a supervisor under the Act, and therefore ineligible to act as an employee representative. The company then told the employee he could see no one and proceeded to interview the employee while recording the session. The fact that the employee requested an ineligible individual as representative was not dispositive. The Board concluded that the request put the company on notice that the employee desired representation. There, as here, "[t]he Respondent's reply was preemptive and effectively prohibited [the employee] from making a further request for representation." *Montgomery Ward,* 273 N.L.R.B. at 1227.

Also instructive is *Bodolay Packaging Machinery, Inc.,* 263 N.L.R.B. 320 (1982). In that case, the employee, en route to an investigatory interview, asked the supervisor accompanying him "if he needed a witness." *Id.* at 325. The supervisor responded "no." The Board affirmed the ALJ's conclusion that the employee requested representation at an investigatory interview which he reasonably believed would lead to discipline. *See id.* at 320 n. 3, 325. Similarly, in *United States Postal Service,* 256 N.L.R.B. 78 (1981), *modified, National Labor Relations Board v. United States Postal Service,* 689 F.2d 835 (9th Cir.1982), the Board found an 8(a)(1) violation under the following circumstances:

> Immediately upon Durkin's arrival at work the following morning, Siller asked Durkin to accompany him to Golden's office. *Durkin asked if he needed his union representative.* Siller answered no, it was only a discussion. In the office, Siller again asked Durkin for an explanation for being late ... and for failing to seek prior approval for overtime.

**8.** Under the circumstances, we do not construe this question as Lynch asking the opinion of the two security representatives on their views of union representation, but rather asking whether or not the interview was investigatory, whether Lynch could reasonably expect to receive discipline as a result of it, and if so, whether she could have a union representative present.

*Id.* at 80 (emphasis added); *see also Southwestern Bell Telephone Company,* 227 N.L.R.B. 1223, 1223 (1977) (holding that employee inquiries during investigatory interviews asking whether union representation was needed, and more generally, about "calling in" the Union, were sufficient to trigger *Weingarten* ).

The Board's conclusion that Lynch's inquiry was sufficient to trigger *Weingarten* is fully supported by Board precedent. We hold that the Board's conclusion that Bell violated Section 8(a)(1) by denying Lynch union representation meets the requirements of the Supreme Court's decisions in both *Chevron* and *United Food and Commercial Workers Union.* Accordingly, we will enforce the Board's order.

### IV. *Duty to Provide Information*

The final issue before us is whether the Board majority's opinion, that Bell's refusal to supply CWA with the Security Report and the first page of the computer Note Screens violated Sections 8(a)(1) and (5) of the Act, comprises a permissible construction of the statute.

As part of its statutory obligation to bargain collectively, *see supra* pp. 8–9 (Section 8(a)(5) of the NLRA), Bell is required "to provide information that is needed by the bargaining representative for the proper performance of its duties." *National Labor Relations Board v. Acme Industrial Co.,* 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495 (1967); *accord Detroit Edison Co. v. National Labor Relations Board,* 440 U.S. 301, 303, 99 S.Ct. 1123, 1125, 59 L.Ed.2d 333 (1979); *New Jersey Bell Telephone Co. v. National Labor Relations Board,* 720 F.2d 789, 790–91 (3d Cir.1983). This obligation extends to information needed for the processing of grievances. *See Acme Industrial Co.,* 385 U.S. at 436, 87 S.Ct. at 568; *United States Department of the Navy,* 840 F.2d at 1138–39; *Clinchfield Coal Co.,* 275 N.L.R.B. 1384 (1985). The information requested does not have to be in the form requested by the union, it must only be made available in a useful format. *See Roadway Express, Inc.,* 275 N.L.R.B. 1107

(1985); *American Telephone & Telegraph Co.,* 250 N.L.R.B. 47, 47, 54 (1980), *aff'd, Communication Workers of America v. National Labor Relations Board,* 644 F.2d 923 (5th Cir.1981). Further, the request for information must be sufficiently specific to apprise the company of what information is sought. *See* 255 N.L.R.B. 425, 430 (1981).

In deciding whether specifically requested information is of the type a company must disclose, the Supreme Court approved the Board's use of a "discovery-type" standard: there must only be a "probability that the desired information is relevant." *Acme Industrial Co.,* 385 U.S. at 437, 87 S.Ct. at 568; *Leland Stanford Junior University,* 262 N.L.R.B. 136, 139 (1982), *aff'd,* 715 F.2d 473 (9th Cir.1983); *see also Transport of New Jersey,* 233 N.L.R.B. 694, 694 (1977) ("[I]t is sufficient that the union's request for information be supported by a showing of 'probable' or 'potential' relevance."). CWA requested information that the company both included in its Security Report and relied upon in its decision to discipline Lynch. The Board permissibly concluded that the information requested by CWA fell within the scope of Section 8(a)(5).

Bell argues that the Security Report and the first page of the Note Screens fall within a Board created exception to the *Acme Industrial* rule. In *Anheuser–Busch, Inc.,* 237 N.L.R.B. 982 (1978), the Board held that the duty to provide a union with information related to a pending grievance does not extend to witness statements. *Accord Certainteed Corp.,* 282 N.L.R.B. 1101, 1124–25 (1987) (company not required to disclose witness statements of security guards who had themselves observed picket line violence). The foundation of the *Anheuser–Busch* holding was the Supreme Court's decision in *National Labor Relations Board v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 239–40, 98 S.Ct. 2311, 2325–26, 57 L.Ed.2d 159 (1978). *Robbins Tire & Rubber Co.* exempted witness statements collected by Board agents during Board investigations from Freedom of Information Act ("FOIA") disclosure in or-

der to prevent intimidation of witnesses.[9] In light of the fact that the company had given its views of the incidents leading to discipline and also summarized the witness statements for the union at a grievance meeting, the Board concluded that pre-arbitration disclosure of witness statements would not advance the grievance and arbitration process. *See Anheuser–Busch*, 237 N.L.R.B. at 984.

The Board has refused to extend the *Anheuser–Busch* holding beyond witness statements, however. Notably, *Anheuser–Busch* specifically left intact a prior holding that lists of witnesses' names and addresses had to be released to employee representatives. *See* 237 N.L.R.B. at 984 n. 5 (reaffirming the holding of *Transport of New Jersey*, 233 N.L.R.B. 694 (1977)); *cf. United States Department of the Navy v. Federal Labor Relations Authority*, 840 F.2d 1131 (3d Cir.1988) (affirming a Federal Labor Relations Authority order requiring the Philadelphia Naval Shipyard to disclose the names and addresses of all bargaining unit members). A company must disclose a video tape purportedly showing an employee stealing company property because it is "the property and work product of the Company." *Square D. Electric Company*, 266 N.L.R.B. 795, 797 (1983).

Most persuasively, businesses have been ordered to reveal documents similar to those at issue here. In *United Technologies Corp.*, 277 N.L.R.B. 584 (1985), the Board ordered the disclosure of all internal security investigative reports concerning alleged employee negligence. The Board rejected the corporation's argument that such reports need not be released simply because they contained the results of supervisory investigations. *See id.* at 588–89.

While there are factual differences between the Security Reports involved in *United Technologies* and the Security Reports here, *United Technologies* stands for the broader proposition that investigative reports, relied upon by management when disciplining an employee, are generally discoverable. *Cf. infra* note 11 & accompanying text (discussing the *Detroit Edison* exception to pre-arbitration discovery). This rule is compatible with the underlying purposes of the Act in general, and Section 8(a)(5) in particular. It would be difficult for an employee's representative to be effective without access to the facts underlying management's disciplinary decision. Additionally, a rule that prohibits management from shielding its investigative reports by making a bare assertion that those reports are, or merely contain, witness statements, is also a permissible construction of the Act.[10]

In the matter at hand, the Board held that the requested material simply did not fall within the *Anheuser–Busch* exception.

[U]nder the undisputed facts of this case we cannot find that the reports made by Respondent's officials can be construed as a statement made by a complaining customer.

It is undisputed that the customer did not review the reports, have them read to her … or in any manner adopt them…. Further, there is no contention that the reports are or even approximate a verbatim transcript…. [T]he reports are in essence the handiwork of the Respondent's officials, reflective only of their impressions of what transpired … *as well as whatever other material the officials may have deemed appropriate to include in the reports.*"

---

**9.** In *Robbins Tire & Rubber Co.* the Court construed an exemption to mandatory disclosure under the FOIA. The exemption protected from disclosure those documents, which if disclosed, would interfere with enforcement proceedings. The employer contended that a determination of whether the disclosure would interfere with an ongoing proceeding should be done on a case by case basis. *See* 437 U.S. at 222–23, 98 S.Ct. at 2317–18. The Court rejected the employer's argument, in part, because of the risk that unions or employers would "coerce or intimidate" po-

tential witnesses from testifying, or into changing their testimony. 437 U.S. at 239, 98 S.Ct. at 2325.

**10.** We note that the *Acme Industrial* rule has also been used to find unions in violation of the Act. *See, e.g., Culinary Workers' Union*, 281 N.L.R.B. 284 (1986) (refusal of union to provide employers' association with unpublished arbitration decisions is a violation of Section 8(b)(3) of the Act).

App. at 17a (emphasis added). The witness statement rule was originally created by the Board as an exception to the general discovery rule approved by the Supreme Court. A limited interpretation of this exception is a permissible interpretation of the Act. *Cf. Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781. We also find that the Board's determination that the Security Reports at issue do not fall within the Board created *Anheuser–Busch* exception to the *Acme Industrial* rule is consistent with prior Board decisions. *Cf. United Food & Commercial Workers Union*, 108 S.Ct. at 421 n. 20.

Board Member Devaney, in dissent, concluded that the Security Report were witness statements within the meaning of *Anheuser–Busch:*

> [T]he judge's finding that harassment of [the customer] has already occurred speaks forcefully for the application of *Anheuser–Busch* here to both [the customer's] initial statement as well as to [her] additional communication with the Respondent. Accordingly, in agreement with the judge, I would find that [the customer's] complaints are witness statements protected from disclosure under *Anheuser–Busch* . . . .

App. at 22a–1. Under the factual matrix of this case, it is a close judgment as to whether the policy advocated by the majority or the dissent is the more reasonable view. However, neither view conflicts with Congressional intent as expressed in the NLRA. It is in this twilight zone of administrative discretion where we believe that the Board should be affirmed under either the view of the majority or of the dissent.

Since its ruling in this case, the Board has further refined the *Anheuser–Busch* doctrine. In *Pennsylvania Power & Light Co.*, 301 N.L.R.B. No. 138 (1991), the union requested the names, addresses, and statements made by informants the company had used in investigating suspected violations of its drug and alcohol policy. This request was made in relation to pending grievances. The company denied the request based on both *Detroit Edison*[11] and *Anheuser–Busch*. The Board held that *Detroit Edison* required a balancing of interests. *Pennsylvania Power & Light Co.*, 301 N.L.R.B., slip op. at 5.[12] The Board then concluded that the company was not required to disclose the names, addresses, witness statements, or other identifying information of its informants. However, the company was ordered to disclose information of relevance here:

> Balancing the competing interests, however, we find, contrary to the judge, that the Respondent is required to supply the Union with a summary of the informants' statements. This summary should be drafted to include information on which the Respondent relied to meet the threshold "suspicion" standard for

---

**11.** *Detroit Edison* concerned a union request to review an employment aptitude test, and its answers, for use in the preparation of the arbitration of a grievance. The company refused to supply test questions, employee answers, and the scores of individual employees. The Board ordered the company to disclose all of the requested material. The Supreme Court reversed based on the "legitimate and substantial" concern of the company in keeping the test secret. 440 U.S. at 315, 99 S.Ct. at 1131.

The Board has read *Detroit Edison* as requiring a balancing of the company's interest in keeping information confidential with the union's need for information to adequately represent its members. For example in *General Dynamics Corp.*, 268 N.L.R.B. 1432, 1433 (1984), the Board found that the company had violated Section 8(a)(5) by failing to provide the union with access to a study which was performed in preparation for litigation with a third party. However, the Board did not order a full disclosure, instead the parties were ordered to bargain in order to reach an accommodation of their respective interests. Names, addresses, hire dates, social security numbers, rates of pay, job classifications, and payroll records are not considered confidential within the meaning of *Detroit Edison. See, e.g., Tom's Ford, Inc.*, 253 N.L.R.B. 888, 894–95 (1980).

On appeal, Bell does not contend that the information requested by CWA in this matter falls within the *Detroit Edison* exception. In fact, Bell does not cite *Detroit Edison*.

**12.** *Accord Olivetti Office U.S.A., Inc. v. National Labor Relations Board*, 926 F.2d 181, 188 (2d Cir.1991) ("True it is that an employer may sometimes refuse access to relevant information for reasons of confidentiality. Before recognizing such a right, however, the court must first determine that the union's right to relevant information is outweighed by the employer's legitimate claim.") (citations omitted).

performing the drug tests.... In our view, such a summary should be sufficient to give the Union notice of whether the Respondent the "suspicion" standard. *Id.* at 11–12. The Security Reports requested by CWA are virtually identical to the summaries the Board required in *Pennsylvania Power & Light Co.*[13]

We do not deem inconsequential the potential problem of harassment and intimidation as stressed by the dissenting Board member and the ALJ. Nor do we diminish the importance of the *Detroit Edison* exception to the *Acme Industrial* rule, created for the protection of confidential information. *See Detroit Edison Co.,* 440 U.S. at 319–20, 99 S.Ct. at 1133–34. *New Jersey Bell Telephone Co.,* 720 F.2d at 791; *see also supra* note 11 (discussing *Detroit Edison*). This case presents a question of balancing these competing interests, which is a task delegated by Congress to the wisdom and expertise of the Board in the first instance. We cannot say that the result reached by the Board majority is prohibited by the Act. Therefore, the Board's Order will be enforced.

## V. *Conclusion*

Bell's appeal invites us to grapple with the fine points of the *Anheuser–Busch* rule as it applies to the delicate interplay among companies, unions, and customers. While the invitation is tempting, it is an invitation we may not accept in light of the Decision and Order of the Board.

> When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail.

*Chevron,* 467 U.S. at 866, 104 S.Ct. at 2793. Neither Section 8(a)(1) nor Section 8(a)(5) of the NLRA speak directly to the issues presented by this appeal. The Board has sought to reconcile the union's right to

information when representing its members with the company's need for confidentiality. Having found that the Board's unfair labor practice findings comprise permissible constructions of the Act, and also that those findings are compatible with prior Board law, we will enforce the Board's Decision and Order in its entirety.

**13.** In *Certainteed Corp.,* 282 N.L.R.B. 1101, 1124–25 (1987), the ALJ, whose decision was adopted by the Board, held that the statements of security guards who had witnessed picket line violence did not have to be disclosed. The issue of summary statements was not raised or discussed.