CONGRESO DE UNIONES IN-
DUSTRIALES DE PUER-
TO RICO, Plaintiff,

v.

BACARDI CORPORATION, Defendant.

Civil No. 96–1051 (RLA).

United States District Court,
D. Puerto Rico.

Feb. 24, 1997.

Nicolas Delgado Figueroa, Puerto Nuevo, Puerto Rico, for Plaintiff.

Pedro J. Manzano–Yates, Fiddler Gonzales & Rodriguez, San Juan, Puerto Rico, for Defendant.

### ORDER CONFIRMING ARBITRATION AWARD

ACOSTA, District Judge.

This action was instituted by the CONGRESO DE UNIONES INDUSTRIALES DE PUERTO RICO ("UNION") seeking review of an arbitration award upholding the dismissal of MR. GUADALUPE MERCED for alcohol consumption in the workplace. The complaint was originally filed in the local court and removed by defendant to this forum.

#### A. FACTUAL BACKGROUND

According to the award, MR. ROBERT GNIBUS, while taking attendance at a celebration held at BACARDI's offices, "perceived a strong alcohol odor [and] noted that [MERCED's] movements were strange and

that he spoke little." Whereupon, MR. MERCED was required to take an alcohol and/or drug test and was then taken to a laboratory to effect the same. The person who drove MR. MERCED to the testing facilities testified of "a strong smell of alcohol" in the car. MR. MERCED tested positive for alcohol[1] and was dismissed on this ground.

Based on the evidence presented to him, the arbitrator found that the dismissal was justified.

## B. CHALLENGES TO THE AWARD

The UNION challenges the award on the following grounds:

1. Lack of Union representation at interview;

2. Unilateral implementation of drug/alcohol testing policy;

3. Inadmissibility of test results;

4. Constitutionality of testing.

## C. SCOPE OF REVIEW

 The role of the court in reviewing arbitration awards is "extremely narrow and exceedingly deferential." *Wheelabrator Envirotech Operating Serv., Inc. v. Mass. Laborers Dist. Council Local 1144,* 88 F.3d 40, 43 (1st Cir.1996); *Serv. Employees Int'l Union v. Local 1199 N.E.,* 70 F.3d 647, 651 (1st Cir.1995). Awards based on the interpretation of the contract will be upheld provided that the interpretation is plausible. *Wheelabrator; Serv. Employees Int'l Union.*

 Further, awards will be set aside if they violate an explicit and well-defined public policy as established by reference to the laws and legal precedents. *United Paperworkers Int'l v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *W.R. Grace and Co. v. Local Union 759,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *Serv. Employees Int'l Union,* 70 F.3d at 652.

 In reviewing an award the courts are bound by the facts as accepted by the arbitrator even if it is in disagreement with them.

Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims or factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them.

*Misco,* 484 U.S. at 38–39, 108 S.Ct. at 370–71, 98 L.Ed.2d at 299.

## D. DISCUSSION

### (1) Lack of Union Representation at Interview

The Supreme Court has recognized the right of an employee to be accompanied by a union representative during an interview which may result in disciplinary action. *N.L.R.B. v. J. Weingarten, Inc.,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). *Weingarten* found that the denial of representation under these circumstances interfered with rights secured by § 7 of the National Labor Relations Act, 29 U.S.C. § 157 to engage in concerted activities for mutual aid or protection.

 However, the right to have a representative in attendance is contingent upon the employee's request to that effect. *N.L.R.B. v. N.J. Bell Tel. Co.,* 936 F.2d 144, 148 (3rd Cir.1991) ("A prerequisite to finding a *Weingarten* violation is a determination that the employee expressed some desire to have a union representative present during the interview in question".); *El Gran Combo de P.R. v. N.L.R.B.,* 853 F.2d 996, 1003 n. 3 (1st Cir.1988) ("[T]here should be no dispute that the employee's *request* for representation is itself protected".)

 The arbitrator found that no such request had been made by MR. MERCED. Since "[w]e may not second guess the factual findings of the arbitrator", *Serv. Employees*

---

**1.** Although the drug test result was also positive the dismissal was only for alcohol consumption.

*Int'l Union,* 70 F.3d at 653, we find no reason to disturb this finding.

## (2) Unilateral Implementation of Drug/Alcohol Testing Policy

The arbitrator determined that BACARDI's authority to establish drug and alcohol testing policies was inherent in its right to administer its business contained in Article 11 of the Collective Bargaining Agreement and that no limitations had been imposed in this regard in the agreement. We find no basis for disturbing this finding nor has plaintiff pointed to any grounds to do so.

■ Further, the arbitrator determined that the policy was implemented after the employer had unsuccessfully attempted to negotiate this matter with the UNION and after due notice had been given to the employees. Again, we defer to the arbitrator's discretion in making factual determinations and interpreting the terms of the agreement especially in view of the employer's right to unilaterally implement changes in the terms of employment in situations of impasse. *Rivera–Vega v. ConAgra, Inc.,* 70 F.3d 153, 161 (1st Cir.1995).

## (3) Inadmissibility of Test Results

The UNION challenges the admissibility of the alcohol test results during the arbitration proceedings alleging that BACARDI failed to present evidence regarding personnel qualifications and the testing methodology to vouch for their reliability. Plaintiff contends that the only testimony presented at the hearing was circumscribed to the reading and interpretation of the results without any information pertaining to the details of the testing process.

In accepting the test results the arbitrator found that absent "any manifest vice of the tests, we must then conclude that same were taken and carried out according to the rules and specifications that regulate the laboratories and complied with the parameters of scientific certainty."

■ Arbitrators are not bound by the procedural and evidentiary precepts applicable in court settings. *See Bowles Fin. Group v. Stifel, Nicolaus & Co.,* 22 F.3d 1010, 1013 (10th Cir.1994); *Robbins v. Day,* 954 F.2d 679, 685 (11th Cir.1992) ("An arbitrator enjoys wide latitude in conducting an arbitration hearing. Arbitration proceedings are not constrained by formal rules of procedure or evidence"); *Westinghouse Elevators of P.R., Inc. v. S.I.U. De P.R.,* 583 F.2d 1184, 1187 (1st Cir.1978) (arbitrator not bound by strict rules of evidence). Rather, the guiding concern is that the parties receive a fundamentally fair hearing. *Hoteles Condado Beach v. Union De Tronquistas Local 901,* 763 F.2d 34, 39 (1st Cir.1985).

■ We find that the arbitrator's determination in this regard was within his prerogative and must stand. "The parties did not bargain for the facts to be found by a court, but by an arbitrator chosen by them who had more opportunity to observe [the employee] and to be familiar with the plant and its problems." *Misco,* 484 U.S. at 45, 108 S.Ct. at 374, 98 L.Ed.2d at 303.

Further, it is important to bear in mind that the arbitrator's determination upholding the dismissal on alcohol consumption grounds was not based exclusively on the challenged test results. There was ample evidence presented to the arbitrator, which he was free to believe, which provided additional support for his conclusion. In light of this, we must abide by the Supreme Court precepts which bestow great deference to arbitrator's factual determinations.

## (4) Alcohol Testing

BACARDI instituted a Policy on Controlled Substances in accordance with the Drug Free Workplace Act of 1988, 41 U.S.C. § 701 (Supp.1995). The Administration and Implementation of the Policy Regarding Controlled Substances issued in accordance therewith specifically at ¶ A(1) which limited testing for alcohol and drug use to two particular circumstances, i.e., (1) when the security/health of the employees may be affected and/or (2) if reasonable basis to believe an employee was using or was under the influence of controlled substances. Prior to its implementation notice of the policy was given to all employees.

Plaintiff challenges the legality of the arbitration award under *W.R. Grace,* claiming that it:

> [V]iolated the constitutional rights and the public policy upon submitting plaintiff to a compulsory alcohol and drugs test, when it was not evidenced that plaintiff's work or functions are in sensitive areas that allow implementation of this policy.

In examining the legality of the testing practice we shall focus on the constitutionality of this measure.[2]

■ Alcohol and drug testing are considered searches under the ambit of the Fourth Amendment to the U.S. Constitution. However, this protection is only applicable to actions taken by the government or under government mandate. It does not apply to testing carried out by private entities. *See Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *Nat'l Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989).

■ In Puerto Rico the right to privacy is secured under the Bill of Rights of our Constitution and its protection extends to actions of private persons. *See Arroyo v. Rattan Specialties, Inc.,* 117 D.P.R. 35 (1986) (striking as unconstitutional polygraph testing in private enterprise). It is uncontested by the parties that alcohol and drug testing entails an intrusion into the privacy rights of employees. The issue before us is whether or not the particular intervention in this case was permissible.

The Supreme Court of Puerto Rico has not ruled on the constitutionality of alcohol or drug testing in Puerto Rico. In *Pacheco Pietri v. E.L.A.,* 93 J.T.S. 117, 1993 WL 840054 (June 30, 1993) the only issue addressed by the Court was whether or not a government employee could sue for having had the positive drug test results of another employee erroneously attributed to him. The legality of the executive order requiring the employees to submit to drug testing was merely

noted in the dissenting opinion. *Id.* at 10993 n. 9 (Alonso, J., dissenting).

■ The right to privacy, although fundamental, is not absolute and may yield to compelling circumstances. In an employment setting the validity of intrusions into an employee's privacy rights will be examined by reference to the employer's particular business interests at stake. That is, the right to privacy of the individual will be balanced against the legitimate business interests his employer is seeking to protect through the measures under attack. *See Arroyo,* 117 D.P.R. at 61 n. 32; *see also Pacheco Pietri,* 117 J.T.S. at 10993 n. 9 (Alonso, J., dissenting) (quaere: is drug testing allowed in Puerto Rico under the balancing of interests standard?).

■ Thus, a policy establishing alcohol testing in the workplace will be deemed constitutional if: (1) it protects legitimate business interests, and (2) the measures taken are reasonable. Provided, of course, that adequate notice thereof is given to the employees.

■ Plaintiff's constitutional challenge to the award is circumscribed to a claim that BACARDI failed to establish that MR. MERCED worked in a "sensitive" area. However, in addition to protection of "sensitive" areas, other legitimate business concerns are also entitled to protection by employers.

The use of alcohol in the workplace poses serious implications for both job performance and productivity. There is ample documentation that confirms the impact of alcohol abuse on productivity, absenteeism, security and safety in employment settings. *See* Patricia A. Montgomery, Workplace Drug Testing: Are There Limits?, 32 Tenn. Bar J. 20 (March–April 1996) (widespread use of drugs in workplace costs billions in lost productivity resulting from "poor workmanship, absenteeism and increased tardiness, increased problems associated with employee theft, accidents resulting in injuries and property damage"); Charles L. Redel and Augustus

---

**2.** We reiterate that the dismissal was based strictly on alcohol consumption not on the drug testing results.

Abbey, The Arbitration of Drug Use and Testing in the Workplace, 48 Arb. J. 80 (March 1993) (alcohol and drug use has serious implications for job performance and productivity); Morgan, Lewis & Bockius, State–by–State Drug and Alcohol Testing Survey, 33 Wm. & Mary L.Rev. 189 (fall, 1991) (use of alcohol and drugs is significant economic and social problem affecting public and private employers); Jeffrey J. Olsen, A Comprehensive Review of Private Sector Drug Testing Law, 8 Hofstra Lab. L.J. 223 (spring 1991) (use and abuse of drugs and alcohol is significant legal, economic and social problem in workplace and has replaced AIDS as top workforce concern); Judith M. Janssen, Substance Abuse Testing and the Workplace: A Private Employer's Perspective, 12 Geo. Mason U.L.Rev. 611 (summer, 1990) (as much as twenty-five percent of the American work force affected by substance abuse; $100 billion annually lost in productivity due to drug and alcohol abusers).

Substance abuse is a widespread problem in the workplace extensive to all types of occupations.

> Substance abuse (whether the substance be drugs or alcohol) is a disturbing and pervasive fact of contemporary society.... It has been estimated that between sixty-five percent and seventy percent of problem drinkers are regularly employed.... Those employees who misuse or abuse alcohol pose no less threat to safety, productivity, and overall firm economic efficiency than do those for whom illegal drugs are the substance of choice. While alcohol-related losses, like drug-related losses, are exceedingly difficult to quantify accurately, the total cost is said to be in excess of fifty billion dollars annually.

> All organizations must acknowledge the substantial probability that substance abuse has touched the workforce. Manufacturers, financial service companies, telecommunication agencies, airlines, professional law, accounting, medical and engineering firms -none have any claim to a drug-or alcohol-free environment.

Kenneth Wm. Thornicroft, The War on Drugs Goes to Work: Employer Drug Test-ing and the Law, 17 Ohio N.U. L.Rev. 771 (1991) (footnotes omitted).

The severity of the economic impact brought about by substance abuse by employees is alarming.

> The problem of substance abuse in the workplace is unquestionably costly to both employers and their employees.... In 1993, the Secretary of Health and Human Services reported that losses in productivity caused by alcohol abuse alone may have been as high as $27 billion in 1985 equating to 39 percent of the total economic cost of alcohol abuse which was estimated to be approximately $70 billion annually. Likewise, productivity lost in 1988 as a result of drug abuse has been estimated at approximately $7.2 billion annually and $33 billion for alcohol abuse. Recoupment of these losses would undoubtedly be beneficial, resulting in lower prices for products caused by lower production costs, higher profits resulting in more jobs economy-wide, and increased wages and employee benefits. However, even these benefits pale when compared to savings which would be realized in terms of employee health, safety and enterprise which would be gained by lowering substance abuse in the workplace.

Shawn D. Twing, Drug & Alcohol Testing by Private Employers ... and its Relationship to Workers' Compensation Practice in Arkansas, 31 Ark. Lawyer 31 (fall 1996) (footnotes omitted).

■ Based on the foregoing, we find that BACARDI had a legitimate business interest which warranted the applicability of the testing policy in working areas beyond those termed "sensitive".

■ Further, the testing limitations imposed by the Policy set by BACARDI are reasonable. Employee testing could only be required under two particular circumstances:

1. At any time that the security and health of Bacardi Corporation employees may be affected; and/or

2. When reasonable basis exists to believe an employee is using and/or is under the influence of controlled substances.

As previously discussed, interference with the privacy rights of employees are not entirely prohibited. The only limitation is that the competing rights of the individual and the employer be balanced to determine whether the impingement is warranted. Given the proven negative effect of alcohol use in the workplace and the limited applicability of the testing policy at issue we find that the policy as written does not excessively interfere with the privacy of employees while at the same time safeguards the employer's legitimate safety and economic concerns.

Further, the particular intervention with MR. MERCED in this case fell within the terms of the Policy. The award makes specific note of the fact that "MR. GNIBUS perceived a strong alcohol odor, noted that [plaintiff's] movements were strange and that he spoke little." Therefore, reasonable grounds existed for believing that the employee was under the influence of alcohol which prompted the testing. Further, apart from the positive test results, the initial suspicion was confirmed by other witnesses found credible to the arbitrator who also noted plaintiff's strong alcohol breath. Additionally, plaintiff had a long history of alcoholism and two prior unsuccessful attempts at rehabilitation.

As previously indicated, "we may not second guess the factual findings of the arbitrator", *Serv. Employees Int'l Union,* 70 F.3d at 653, which in this particular instance are well documented by the facts as found credible to the arbitrator.

### E. CONCLUSION

Based on the foregoing, we find that no grounds exist for vacating the award.

Accordingly, the arbitration award dated November 15, 1995 upholding the dismissal of MR. GUADALUPE MERCED is hereby **CONFIRMED** and the complaint filed in this case is hereby **DISMISSED.**[3]

3. *See* Defendant's Opposition to Plaintiff's Petition for Review of Arbitration Award (docket No. 12). Defendant's Motion Submitting Certified

Judgment shall be entered accordingly.

IT IS SO ORDERED.

Translations of Documents (docket No. 7) is **NOTED.**